STATE OF HAWAII, Plaintiff-Appellant, *v.* ERROL KEALIIKAAPUNI KANE, also known as Sparky, Defendant-Appellee

NO. 8384

(CRIMINAL NO. 55751)

OCTOBER 25, 1982

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C.J.

Defendant Errol K. Kane was charged with carrying a firearm on his person without a permit or license in violation of Hawaii Revised Statutes (HRS) § 134-9 (Supp. 1980). The trial court granted Kane's motion to dismiss the indictment because the indictment did not explicitly allege the required state of mind as specified in HRS § 702-204 (1976). The State appeals the dismissal contending that the indictment is legally sufficient. We agree.

On March 20, 1981, while conducting a pat-down search, a police officer found a pistol on Kane. Kane had obtained a permit to acquire a firearm and had registered the pistol with the Honolulu Police Department (Exhibit F). However, he had not obtained a permit to carry a firearm as required by HRS § 134-9.

On the back of the gun registration form, the following notice was stamped and signed "Errol K. Kane":

I understand that this registration DOES NOT authorize me to carry the firearm on my person.

I have been informed that PERMITS TO CARRY FIRE-ARMS are issued separately, and only in compliance with section 134-9, Hawaii Revised Statutes.

On May 27, 1981, the Oahu Grand Jury indicted Kane as follows:

On or about the 20th day of March, 1981, in the City and County of Honolulu, State of Hawaii, ERROL KEALII-KAAPUNI KANE, also known as Sparky, did carry on his person a pistol or revolver without a permit or license to carry a firearm on his person, thereby committing the offense of Carrying a Firearm on Person Without a Permit or License in violation of Section 134-9 of the Hawaii Revised Statutes.

Hawaii Revised Statutes § 134-9 states, *inter alia:*[1] "No person shall carry concealed or unconcealed on his person a pistol or revolver without being licensed to do so under this section or in compliance with section 134-6."

Hawaii Revised Statutes § 134-6 (1976) provides, *inter alia:*

§ 134-6 *Place to keep firearms; loaded firearms, when prohibited.* Except as provided in sections 134-5 and 134-9, the possession of all firearms and ammunition shall be confined to the possessor's place of business, residence, or sojourn, but it shall be lawful to carry firearms or ammunition, or both, in a wrapper or other suitable container from the place of purchase to the purchaser's home, place of business, or place of sojourn, or between these places upon change of place of business, abode, or sojourn, or between these places and a place of repair or a target range.

It shall be unlawful for any person to have in his possession or to carry on any public highway any firearm loaded with ammuni-

---

[1] The full text of HRS § 134-9 (Supp. 1980) is as follows:

§ 134-9 *Permits to carry; penalty.* In an exceptional case, when the applicant shows reason to fear injury to his person or property, the respective chiefs of police may grant a license to a citizen of the United States or a duly accredited official representative of a foreign nation, of the age of twenty years or more, to carry concealed on his person within the county where the license is granted, a pistol or revolver and ammunition therefor; or where the urgency of the need has been sufficiently indicated to the respective chiefs of police, they may grant to an applicant of good moral character who is a citizen of the United States of the age of twenty years or more, who is engaged in the protection of life and property and not prohibited under section 134-7 from the ownership or possession of a firearm, a license to carry unconcealed on his person within the county where the license is granted, a pistol or revolver. Unless renewed, the license shall automatically become void at the expiration of one year from date of issue. No license shall be issued unless it appears that the applicant is a suitable person to be so licensed, and in no event to a person who is prohibited under section 134-7 from the ownership or possession of a firearm, or a person adjudged insane or appearing to be mentally deranged. No person shall carry concealed or unconcealed on his person a pistol or revolver without being licensed so to do under this section or in compliance with section 134-6.

For each license there shall be charged a fee of $10, which shall be deposited in the treasury of the county in which the license is granted.

Any person violating this section shall be guilty of a class C felony.

This section was amended on June 24, 1981 to add that "[t]he chief of police of each county shall adopt procedures to require that any person granted a license to carry a concealed weapon on his person, shall be qualified to use the firearm in a safe manner."

tion; provided that the provisions of this paragraph shall not apply to any person who has in his possession or carries a pistol or revolver and ammunition therefor in accordance with a license or permit issued, as provided in section 134-9.

Although a violation of either section may result in imprisonment,[2] neither HRS § 134-6 nor HRS § 134-9 specifies the state of mind required, if any. Kane, however, claims that HRS § 702-204 (1976) requires proof of an intentional, knowing, or reckless state of mind for conviction under HRS § 134-9 and that the failure of the indictment to so allege renders it void.

Hawaii Revised Statutes § 702-204 (1976) states:

§ 702-204 *State of mind required.* Except as provided in section 702-212, a person is not guilty of an offense unless he acted intentionally, knowingly, recklessly, or negligently, as the law specifies, with respect to each element of an offense. When the state of mind required to establish an element of an offense is not specified by the law, that element is established if, with respect thereto, a person acts intentionally, knowingly, or recklessly.

The commentary to HRS § 702-204 explains, *inter alia:*

When a particular state of mind is required to establish the elements of an offense, it will usually be specified in the definition of the offense, however it may be separately specified by another provision of the law. In the absence of such specification, intent, knowledge or recklessness will suffice.

Hawaii Revised Statutes §§ 134-9 and 134-6 being silent, HRS § 702-204 supplies the requisite state of mind. Thus, to support a conviction under HRS § 134-9, it is necessary to prove that Kane acted intentionally, knowingly, or recklessly. *State v. Carvalho,* 58 Haw. 314, 568 P.2d 507 (1977) (HRS § 702-204 required showing of intentional, knowing, or reckless failure to appear in response to traffic citation or summons).

The State, however, claims that HRS § 134-9 imposes absolute liability and does not require any state of mind to be proved or

---

[2] A violation of HRS § 134-9 is a class C felony which carries a maximum term of imprisonment for five years pursuant to HRS § 706-660 (Supp. 1981). A violation of HRS § 134-6 is a misdemeanor which carries a maximum penalty of $1,000 and imprisonment for one year.

alleged.[3] In support of its claim, the State cites HRS § 702-212(2) (1976) which provides, *inter alia:*

> § 702-212 *When state of mind requirements are inapplicable to violations and to crimes defined by statutes other than this Code.* The state of mind requirements prescribed by sections 702-204 and 702-207 through 702-211 do not apply to:
>
> \* \* \*
>
> (2) A crime defined by statute other than this Code, insofar as a legislative purpose to impose absolute liability for such offense or with respect to any element thereof plainly appears.

Since the legislative purpose to impose absolute liability does not plainly appear, *State v. Rushing,* 62 Haw. 102, 612 P.2d 103 (1980), we disagree with the State's contention and hold that HRS § 134-9 does not impose absolute liability.

Alternatively, the State argues that although HRS § 702-204 requires that the accused act "intentionally, knowingly, or recklessly," the indictment need not allege state of mind because HRS § 806-28 (1976) provides:

> § 806-28 *Characterization of the act.* The indictment need not allege that the offense was committed or the act done "feloniously", "unlawfully", "wilfully", "knowingly", "maliciously", "with force and arms", or otherwise except where such characterization is used in the statutory difinition of the offense. Where the characterization is so used the indictment may employ the words of the statute or other words substantially of the same import. In alleging the transaction the indictment may use the nounal, adjectival, verbal, or adverbial form of the statutory name of the offense.

Kane, however, contends that state of mind is an essential element which must be alleged in the indictment according to the Hawaii Supreme Court's holdings in *State v. Jendrusch,* 58 Haw. 279,

---

[3] Under an absolute liability statute, no *mens rea* is required so state of mind need not be alleged in the indictment. *United States v. Balint,* 258 U.S. 250, 42 S. Ct. 301 (1922); *United States v. Behrman,* 258 U.S. 280, 42 S. Ct. 303 (1922); *see Powell v. Texas,* 392 U.S. 514, 535, 88 S. Ct. 2145 (1968) (doctrine of *mens rea* not constitutionally mandated); HRS § 702-212 and Commentary (1976) (absolute liability recognized).

567 P.2d 1242 (1977), and *State v. Faulkner,* 61 Haw. 177, 599 P.2d 285 (1979). We disagree.

Neither *Jendrusch* nor *Faulkner* examined HRS § 806-28. Additionally, we find that the facts of the two cases are clearly distinguishable from the facts of the present case.

In *Jendrusch,* the statute under which the defendant was charged for disorderly conduct had been amended to specifically require intent to cause *physical* inconvenience or alarm by members of the public. The indictment, however, was drawn in the language of the statute prior to its amendment and alleged intent to cause *public* inconvenience, annoyance, or alarm. Additionally, the indictment failed to allege that the defendant addressed abusive language to a person which was "likely to provoke a violent response," an essential element specified in the statute.

In *Faulkner,* the defendant was charged with an "attempt to commit theft of the property or services of another . . . in violation of Section 833 of the Hawaii Penal Code." He should have been charged under HRS §§ 705-500 and 705-502 with intentionally engaging in conduct which, under the circumstances as he believed them to be, constituted a substantial step in a course of conduct intended to culminate in his commission of the crime of theft in the third degree. More simply stated, Faulkner was charged under the language of the theft statute when he should have been charged under the language of the attempt statute which specifies the requisite state of mind.

Unlike the *Jendrusch* and *Faulkner* cases, the indictment in the case at bar did not fail to allege an element specified in the statute which Kane purportedly violated. Here, HRS § 134-9 is silent as to the requisite state of mind.

While HRS § 806-28 clearly authorizes the non-allegation of the requisite state of mind in indictments brought under HRS § 134-9, we must decide whether such an indictment which takes advantage of HRS § 806-28's permissiveness nonetheless violates Kane's rights under article I, sections 10 and 14 of the Hawaii State Constitution (1978).

In relevant parts, article I, sections 10 and 14 provide:

Section 10. No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury . . . nor shall any person be subject for the

same offense to be twice put in jeopardy[.]

Section 14. In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation[.]

Article I, section 10 guarantees a defendant the right to indictment by a grand jury as well as the right against double jeopardy. Additionally, article I, section 14 requires that the defendant be informed of the nature and cause of the accusation against him. In these respects, article I, sections 10 and 14 of the Hawaii Constitution are identical to the fifth and sixth amendments to the United States Constitution.[4]

To satisfy the notice requirements of section 14 and the double jeopardy bar of section 10, the indictment must adequately describe the offense with which a defendant is charged so that it "sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, . . . shows with accuracy to what extent he may plead a former acquittal or conviction." *Territory v. Yoshimura*, 35 Haw. 324 (1940), quoting *Hagner v. United States*, 285 U.S. 427, 431, 52 S. Ct. 417, 419 (1932), citing *Cochran v. United States*, 157 U.S. 286, 290, 15 S. Ct. 628, 630 (1895), and *Rosen v. United States*, 161 U.S. 29, 34, 16 S. Ct. 434, 480 (1896).

We have no difficulty concluding that the indictment did not in any meaningful way interfere with Kane's right to notice under section 14 and to protection from double jeopardy under section 10. The indictment sufficiently informed Kane of the nature and cause of the accusation and provided a bar to future prosecution for the same offense by detailing the time, place, and facts of the crime with which he was charged. *See Commonwealth v. Bacon*, 372 N.E.2d 780 (Mass. 1978).

The more difficult question involves HRS § 806-28's impact on

---

[4] We note, however, that the fifth amendment right to a grand jury indictment is not one of the privileges or immunities of a United States citizen, and, therefore, is not mandated by the federal constitution in state proceedings. *Maxwell v. Dow*, 176 U.S. 581, 20 S. Ct. 448 (1900); *Hurtado v. California*, 110 U.S. 516 (1884).

We also note that our prior decision in *State v. Tuua*, 3 Haw. App. 287, 649 P.2d 1180, *cert. denied* (October 6, 1982), failed to clearly indicate that the fifth and sixth amendments of the federal constitution do not apply to state indictments.

Kane's right to a grand jury indictment under article I, section 10. The function of the grand jury and importance of a valid indictment are explained as follows:

> While the exact parameters of the constitutional function of the grand jury have never been completely clear, the essence of that function is to refuse to indict a person on evidence presented by the government unless that evidence is persuasive enough to indicate the probable existence of each and every fact necessary to obtain a conviction. Although records are kept at the evidentiary stage of grand jury hearings, the final deliberations are secret. As a result, it falls upon the words of the indictment, without more, to serve as sufficient evidence that this body, composed entirely of laymen, did in fact complete its constitutional task. The question of an indictment's sufficiency is a crucial one, because . . . a valid indictment is a jurisdictional prerequisite to the ability of a court to proceed against the criminal defendant.

Note, *Indictment Sufficiency*, 70 COLUM. L. REV. 876, at 876 (1970). *See Beavers v. Henkel*, 194 U.S. 73, 24 S. Ct. 605 (1903).

To meet the grand jury requirement of article I, section 10, the indictment must be specific enough to ensure that the grand jury had before it all the facts necessary to find probable cause. Probable cause has been defined as "[c]redible evidence which excites in the mind of the grand jury an honest and reasonable belief that the accused is guilty of the offense charged." *State v. Lawler*, 221 Wis. 423, 267 N.W. 65, 568, 574 (1936).

Kane contends that since the indictment did not charge him with acting intentionally, knowingly, or recklessly, the grand jury was not aware that the State was required to prove his state of mind.

Hawaii Revised Statutes § 134-9 creates a general intent[5] crime. With a general intent crime, the statement of the act itself implies the

---

[5] A general intent crime differs from a specific intent crime in the following manner:

An illustration of a general intent sufficing for conviction is the case of A intending to strike B but instead striking C. A is yet guilty of assault and battery, or, if the striking results in death, of homicide, even though A had no specific intent to harm C. . . . On the other hand, there are certain crimes such as burglary and larceny where the act must be accompanied with a specific intent. Thus at common law in larceny there must be a taking and carrying away of the property of another *with the intent* to permanently deprive that person of his ownership of the goods. In

requisite intent. *Territory v. Tacuban,* 40 Haw 208 (1953); *Braswell v. United States,* 224 F.2d 706, 709 (10th Cir. 1955); *Proctor v. United States,* 177 F.2d 656 (D.C. Cir. 1949). Consequently, a particularized allegation of intent is not required in the indictment.[6] *Pino v. United States,* 370 F.2d 247 (D.C. Cir. 1966); *see, United States v. Freed,* 401 U.S. 608, 91 S. Ct. 1112 (1971); *United States v. Dixon,* 596 F.2d 178 (7th Cir. 1979); *contra, Honeycutt v. States,* 627 S.W.2d 417 (Tex. Cr. App. 1982).

In this case, the allegation in the indictment that Kane "did carry on his person a pistol or revolver without a permit or license to carry a firearm" was sufficient to imply that Kane did so "intentionally, knowingly, or recklessly." Thus, we hold that the grand jury had sufficient facts to find probable cause that Kane had committed a violation of HRS § 134-9 and that an explicit allegation of Kane's state of mind was not required in the indictment.

Reversed and remanded for further proceedings consistent herewith.

*Shirley Smith (Josie T. Bayudan* on the briefs), Deputy Prosecuting Attorneys, for plaintiff-appellant.

*David Bettencourt* for defendant-appellee.

---

burglary there must be a breaking and entry of a dwelling house in the night-time *with the intent* to commit a felony therein.

*United States v. Williams,* 332 F. Supp. 1, 3 (D.Md. 1971) (emphasis in the original).

[6] Hawaii Revised Statutes § 806-28 requires a particularized allegation of general intent where the statute which defines the crime specifies the requisite general intent. We express no opinion as to what the rule is for specific intent crimes where the statute which defines the crime does not specify the requisite specific intent.