890 P.2d 303

**STATE of Hawai'i, Plaintiff–Appellant,**

**v.**

**Lorrin ISRAEL, Defendant–Appellee.**

**No. 16803.**

Supreme Court of Hawai'i.

Feb. 27, 1995.

Caroline M. Mee, Deputy Pros. Atty., on the briefs, Honolulu, for plaintiff-appellant.

Theodore Y.H. Chinn, Deputy Public Defender (Kenneth Shimozono, Defender Intern, assisting him on the brief), Honolulu, for defendant-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

KLEIN, Justice.

The State appeals from a circuit court order dismissing one count of a multi-count complaint against defendant-appellee Lorrin Israel. The dismissed count charged Israel with knowingly possessing or intentionally using or threatening to use a firearm while engaged in the commission of a felony in

violation of Hawai'i Revised Statutes (HRS) § 134–6(a) (Supp.1992),[1] and was dismissed for failing to specify which felony Israel was allegedly committed at the time he possessed, used, or threatened to use a firearm. We affirm.

## I. *BACKGROUND*

On June 9, 1992, Israel was arrested on various firearm and ammunition related charges. The following day, complaints were filed in district court for each of five charges. The charges included: Possession of a Firearm by a Person Convicted of Certain Crimes in violation of HRS § 134–7(b) and (g) (Supp.1992); Possession of Ammunition By a Person Convicted of Certain Crimes in violation of HRS § 134–7(b) and (g); Place to Keep Firearm Loaded With Ammunition in violation of HRS § 134–6(c) and (d) (Supp. 1992); and Possession, Use or Threat to Use a Firearm in the Commission of a Felony in violation of HRS § 134–6(a) and (d).[2]

On June 15, 1992, a preliminary hearing on the charges against Israel was held before the district court. According to the testimony presented at the preliminary hearing, on June 9, 1992, Israel drove to Michelle Taniguchi's house where his girlfriend, Carissa Fraczak, was spending the night. When Israel arrived at Taniguchi's house, he saw Michael Caylor who, along with John Strom and Joey Strom, was visiting Taniguchi. Israel spoke briefly with Caylor and then approached Fraczak. Israel asked Fraczak if he could speak with her. After she refused and walked away, Israel returned to his car.

Caylor then saw John and Joey Strom run off. Caylor fled shortly thereafter when he looked back and saw Israel with a gun. When Fraczak saw Caylor and the others running away, she returned and approached Israel. She then saw that Israel had a gun. Israel pointed the gun at her stomach and said "let's talk." Scared by Israel's behavior, Fraczak ran toward the house. Taniguchi calmed Israel down and he threw the gun on the grass. Taniguchi then told Fraczak to come out and talk to him.

Honolulu Police Department (HPD) Officer Kurt Nakamura was dispatched to Taniguchi's residence to a "threatening type case." He met Caylor at another residence where Caylor told Officer Nakamura that Israel had threatened him with a gun. Officer Nakamura then accompanied Caylor to Taniguchi's house where Caylor identified Israel. Officer Nakamura identified himself and started to search Israel for weapons. During the search, Taniguchi drove up in Israel's car. Israel gave Officer Nakamura oral permission to search his car. After a loaded revolver was found under the passenger seat, Israel was placed under arrest.

Following the arrest, Israel gave HPD Detective Elmer Tadley his version of the incident: He went to the Taniguchi residence, got out of his car to talk with Fraczak, then went back to his car to look for a weapon. He did not realize there was a gun in the car until he "felt" it on the passenger side of the car. When the three males ran away, he got out of his car and pointed the gun at Fraczak out of "anger and stupidity." He then dropped the gun on the grass and later put it back in the car. Israel also told Detective Tadley that the gun was his father's and that

---

**1.** At the time of Israel's arrest, HRS § 134–6(a) (Supp.1992) provided:

> **Possession or use of firearm in the commission of a felony; place to keep firearms; loaded firearms; penalty.** (a) It shall be unlawful for a person to knowingly possess or intentionally use or threaten to use a firearm while engaged in the commission of a felony, whether the firearm was loaded or not, and whether operable or not.

Since the order of dismissal in the instant case, the legislature has amended HRS § 134–6 to specifically exclude certain enumerated felonies, including Terroristic Threatening in the First Degree, as the basis for an HRS § 134–6(a) charge.

Act 239, § 1, 1993 Haw.Sess.Laws 239. The legislature specifically provided, however, that the amendment was not to "affect rights and duties that matured, penalties that were incurred, and proceedings that were begun, before its effective date [June 18, 1993]." *Id.*, § 2, at 240. Other amendments not material to the present appeal have also been enacted. *See* HRS § 134–6 (1994 Comp.).

**2.** An additional HRS § 134–6 charge, presumably for violation of HRS § 134–6(b) (Supp. 1992), was originally filed against Israel. For unspecified reasons, the State has elected not to pursue that charge.

he had taken it to clean it. Finally, he admitted that he had previously been convicted of a felony, namely Second Degree Theft, and that he "got off" parole in 1990.

Based on the evidence presented at the preliminary hearing, the district court found probable cause to believe that Israel had committed the four offenses [3] and bound him over to circuit court for further proceedings. The district court gave no indication as to which felony it found probable cause to believe Israel had been committing at the time he possessed, used, or threatened to use a firearm, but simply stated that it found "from the evidence that there is probable cause to believe that the defendant did commit the four remaining charges with which he's charged[.]"

After Israel was committed to the circuit court, a four count complaint was filed charging Israel with each of the offenses that the district court had found probable cause to believe Israel had committed, including Possession, Use or Threat to Use a Firearm in the Commission of a Felony in violation of HRS § 134–6(a).

In full, the HRS § 134–6(a) count, Count IV, alleged:

> On or about the 9th day of June 1992, in the City and County of Honolulu, State of Hawaii, LORRIN ISRAEL did knowingly possess or intentionally use or threaten to use a firearm while in the commission of a felony, whether the firearm was loaded or not, and whether operable or not, thereby committing the offense of Possession, Use or Threat to Use a Firearm in the Commission of a Felony, in violation of Section 134–6(a) and (d) of the Hawaii Revised Statutes.

On September 15, 1992, Israel filed a motion to dismiss Count IV of the complaint, claiming, among other things, that the count "failed to state a claim by not specifying which underlying felony Defendant committed when he used a firearm."

On January 20, 1993, after a hearing, the circuit court granted Israel's motion to dismiss Count IV of the complaint. In its Findings of Fact, Conclusions of Law and Order, the court concluded that "the failure of the complaint to allege an underlying or predicate felony ... violate[d] Article I, Section 14 of the Hawaii State Constitution ... [because t]he absence of an underlying felony being alleged [left] the defendant without any notice of the charge or accusation against him[.]" The court also ruled that "the failure of the complaint to state any underlying or predicate felony ... violate[d] Article I, Section 10 of the Hawaii State Constitution ... [because w]ithout an allegation of any underlying felony relevant to Count IV, there [could have been] no probable cause determination made by [the district] court[.]" Finally, the court stated that it "further bas[ed] its order on any parallel United States Constitutional provisions[.]"

Pursuant to HRS § 641–13(1) (Supp. 1992),[4] the State appeals.

## II. *DISCUSSION*

■ "Although the detailed and technical niceties of previous pleading and practice are no longer required, a charge must still be in a legally sufficient form which correctly advises the defendant about the allegations against him or her." *State v. Cadus,* 70 Haw. 314, 318, 769 P.2d 1105, 1109 (1989); *see also State v. Schroeder,* 76 Hawai'i 517, 529, 880 P.2d 192, 204 (1994). The sufficiency of a charge is measured against several criteria. *See* HRS § 806–34 (1985).[5]

The principal criteria are

3. *See supra* note 2 and accompanying text.

4. HRS § 641–13(1) (Supp.1992) provides:

> **By State in criminal cases.** An appeal may be taken by and on behalf of the State from the district or circuit courts to the supreme court, subject to chapter 602, in all criminal cases, in the following instances:
> (1) From an order or judgment quashing, setting aside, or sustaining a motion to dis-

miss, any indictment or complaint or any count thereof[.]

5. HRS § 806–34 (1985) provides:

> **Sufficiency of averments as to offense and transaction.** In an indictment the offense may be charged by name or by reference to the statute defining or making it punishable; and the transaction may be stated with so much detail of time, place, and circumstances and

first, whether the [charge] "contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he [or she] must be prepared to meet,'" and, secondly, "'in case any other proceedings are taken against him [or her] for a similar offense, whether the record shows with accuracy to what extent he [or she] may plead a former acquittal or conviction.'"

*State v. Daly,* 4 Haw.App. 52, 54–55, 659 P.2d 83, 85 (1983) (quoting *Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962)) (citations omitted). In addition, the charge "must be specific enough to ensure that the grand jury [or the court before which a preliminary hearing is held] had before it all the facts necessary to find probable cause." *Id.* at 54 n. 6, 659 P.2d at 85 n. 6 (quoting *State v. Kane,* 3 Haw.App. 450, 457, 652 P.2d 642, 647 (1982)).

For the reasons set forth below, we hold that the complaint failed to adequately inform Israel of the nature and cause of the HRS § 134–6(a) charge and failed to ensure that the district court had before it all the facts necessary to find probable cause on that charge.

A. *Right to be informed of the nature and cause of the accusation.*

Article I, section 14 of the Hawai'i Constitution provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation[.]" [6]

▮ We believe, and the State apparently agrees, that the underlying felony of an HRS § 134–6(a) charge (i.e., the felony that the defendant was allegedly committing at the time he or she possessed, used, or threatened to use a firearm) is part of the nature and

cause of the accusation. Nonetheless, relying on HRS § 806–31 (1985), the State argues that Count IV's general allegations sufficiently stated the offense. HRS § 806–31 provides:

**Indirect allegations.** No indictment or bill of particulars is invalid or insufficient for the reason merely that it alleges indirectly and by inference instead of directly any matters, facts, or circumstances connected with or constituting the offense, provided that the nature and cause of the accusation can be understood by a person of common understanding.

▮ Count IV of the complaint, however, merely alleged that Israel "did knowingly possess or intentionally use or threaten to use a firearm while in the commission of a felony." The generic term "felony" did not, indirectly or by inference, inform Israel that the underlying felony was Terroristic Threatening in the First Degree. Therefore, we do not believe "that the nature and cause of the accusation [could] be understood by a person of common understanding" from a reading of the complaint itself.

▮ In analyzing whether a defendant's article I, section 14 right to be informed has been violated, however, we are not confined to an examination of the charge. On the contrary,

in determining whether the accused's right to be informed of the nature and cause of the accusation against him [or her] has been violated, we must look to all of the information supplied to him [or her] by the State to the point where the court passes upon the contention that the right has been violated.

*State v. Treat,* 67 Haw. 119, 120, 680 P.2d 250, 251 (1984) (quoting *State v. Robins,* 66

such particulars as to the person (if any) against whom, and the thing (if any) in respect to which the offense was committed, as are necessary to identify the transaction, to bring it within the statutory definition of the offense charged, to show that the court has jurisdiction, and to give the accused reasonable notice of the facts.

Averments which so charge the offense and the transaction shall be held to be sufficient.

6. The sixth amendment to the United States Constitution similarly provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation." Although the sixth amendment does not directly apply to charges filed in state courts, the fourteenth amendment requires that an accused be "given reasonable notice and information of the specific charge against him [or her]...." *Paterno v. Lyons,* 334 U.S. 314, 320, 68 S.Ct. 1044, 1047, 92 L.Ed. 1409 (1948).

Haw. 312, 317, 660 P.2d 39, 42–43 (1983)); *see also State v. Abellira,* 67 Haw. 105, 678 P.2d 1087 (1984). Thus, in *Robins,* this court held that where the defendant could ascertain from the oral decision of the trial court and the grand jury transcript that the State's accusation was that the "crime against a person or against property rights" that he intended to commit as part of a burglary charge was theft, his right to be informed of the nature and cause of the accusation was not violated. Similarly, the court in *Treat* and *Abellira* held that the grand jury transcripts fully informed the defendants of the nature and cause of the accusations against them.

In the instant case, Israel and his attorney were present at the preliminary hearing and had a copy of the transcript of that hearing at the time the motion to dismiss was filed. The testimony that was presented at the preliminary hearing included the following. Caylor testified that he saw Israel with a gun. Caylor left the scene after making eye contact with Israel because Israel held the gun as if he intended to use it. Fraczak testified that Israel pointed the gun at her stomach and said, "let's talk." Frightened by Israel's behavior, Fraczak ran to the house. Officer Nakamura testified that he was dispatched to a "threatening type of case."

The State contends that this testimony amply informed Israel that the underlying felony was Terroristic Threatening in the First Degree. In addition, the State claims that because Israel had argued in his motion to dismiss that First Degree Terroristic Threatening could not be used as the underlying felony in an HRS § 134–6(a) charge, Israel was actually aware of the underlying felony and cannot now complain. We disagree.

7. At the time Tuua's case arose, HRS § 708–840(1)(b) stated in relevant part:

**Robbery in the first degree.** (1) A person commits the offense of robbery in the first degree if, in the course of committing theft:

\* \* \* \* \* \*

(b) He is armed with a dangerous instrument and:

■ Article I, section 14 places the burden on the State to inform the defendant of the nature and cause of the accusation. Moreover, "[t]he principle of fundamental fairness, essential to the concept of due process of law, dictates that the defendant in a criminal action should not be relegated to a position from which he [or she] must speculate as to what crime he [or she] will have to meet in defense." *Kreck v. Spalding,* 721 F.2d 1229, 1233 (9th Cir.1983). To hold that the factual testimony presented at the preliminary hearing, in the absence of any identification of the underlying felony by name or statutory reference, either in the charge or at the hearing, provided sufficient information would improperly shift the burden to Israel and require him to speculate as to that underlying felony.

■ Furthermore, although it is true that if a defendant actually knows the charges against him or her, that defendant's constitutional right to be informed of the nature and cause of the accusation is satisfied, *State v. Tuua,* 3 Haw.App. 287, 292, 649 P.2d 1180, 1184 (1982), in order for a defendant's article I, section 14 right to be deemed satisfied on that basis, the record must clearly demonstrate the defendant's actual knowledge. In *Tuua,* for example, the defendant was convicted of, *inter alia,* eight counts of Robbery in the First Degree,[7] six in violation of HRS § 708–840(1)(b)(ii) and two in violation of HRS § 708–840(1)(b)(i). 3 Haw.App. at 288, 649 P.2d at 1182. One of the defendant's claims on appeal was that the robbery counts of the indictment were defective. *Id.*

Specifically, the defendant in *Tuua* claimed that the HRS § 708–840(1)(b)(ii) charges failed to explicitly allege that the person against whom force was threatened was present and that the HRS § 708–840(1)(b)(i) charges failed to explicitly allege that the person whose resistance or whose physical

(i) He uses force against the person of the owner or any person present with intent to overcome the owner's physical resistance or physical power of resistance; or
(ii) He threatens the imminent use of force against the person of anyone who is present with intent to compel acquiescence to the taking of or escaping with the property.
*Tuua,* 3 Haw.App. at 291, 649 P.2d at 1183.

power of resistance the defendant intended to overcome was the owner. *Id.* at 291–92, 649 P.2d at 1183–84.

The court held that Tuua's constitutional right to be informed was satisfied because he actually knew the charges against him. The court reasoned:

> In their respective openings, both prosecutor and defense counsel spoke only of the crimes of robbery and murder. Tuua did not dispute that the crimes of robbery and murder were committed. His defense was that of mistaken identification. In his instructions to the jury, the trial judge, without objection, told the jury that "the State charges the defendant with eight counts of Robbery in the First Degree" and properly instructed them as to the essential elements of each offense. With respect to the use of force counts, he spoke of the victim as being the "owner." With respect to the threat of force counts, he spoke of the presence of the threatened person.

*Id.* at 292, 649 P.2d at 1184.

■ Unlike the facts of *Tuua*, trial has not begun in the instant case. Thus, there have been no opening statements or jury instructions that could constitute objective indicia of Israel's knowledge of the underlying felony that the State was alleging that he committed. At best, the record reveals that Israel suspected that the underlying felony alleged was Terroristic Threatening in the First Degree and made arguments based on that suspicion in his motion to dismiss; such suspicion does not rise to the level of actual knowledge.

■ Finally, the State argues that Israel's right to be informed was not violated because Israel could and did seek discovery materials, and because a bill of particulars could have been either requested by Israel pursuant to Hawaiʻi Rules of Penal Procedure (HRPP) Rule 7(d) or ordered by the court pursuant to HRS § 806–47 (1985). Based on our rule that all of the information supplied to a defendant must be considered in determining whether the defendant's right to be informed

of the nature and cause of the accusation was violated, *Treat*, 67 Haw. at 120, 680 P.2d at 251, we agree that information provided in a bill of particulars or obtained via discovery should be considered. *But cf. Russell v. United States*, 369 U.S. 749, 770, 82 S.Ct. 1038, 1050, 8 L.Ed.2d 240 (1962) (holding that under federal law, "it is a settled rule that a bill of particulars cannot save an invalid indictment").

In the instant case, however, no bill of particulars was supplied by the State and there is nothing in the record to suggest that any materials provided in response to Israel's discovery requests identified the underlying felony alleged as part of the HRS § 134–6(a) charge. Moreover, the State cannot rely on the mere possibility that the underlying felony might have been revealed by a bill of particulars or via discovery. *Cf. Robins*, 66 Haw. at 316, 660 P.2d at 42 (recognizing that the facts that a bill of particulars is discretionary with the judge pursuant to HRPP Rule 7(a) and that other discovery rules are limited in scope might prevent a defendant from discovering the State's position). Therefore, we hold that the State failed to adequately inform Israel of the nature and cause of the HRS § 134–6(a) charge.

### B. *Protection against double jeopardy.*

Israel has never alleged that Count IV of the complaint lacked sufficient details to enable him to raise double jeopardy in another proceeding. Therefore, we will not address this issue.

### C. *Right to a grand jury indictment or finding of probable cause after a preliminary hearing.*

Article I, section 10 of the Hawaiʻi Constitution provides in part that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury or upon a finding of probable cause after a preliminary hearing held as provided by law[.]"[8]

---

8.  The fifth amendment to the United States Constitution similarly provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or in-

dictment of a Grand Jury[.]" However, "the fifth amendment right to a grand jury indictment is not one of the privileges or immunities of a United States citizen, and, therefore, is not man-

■ To meet the grand jury requirement of article I, section 10, an indictment must be specific enough to ensure that the grand jury had before it all the facts necessary to find probable cause. *State v. Kane*, 3 Haw.App. 450, 457, 652 P.2d 642, 647 (1982). Otherwise, the indictment must be dismissed. *Id.* For

> [j]ust as the [S]tate must prove beyond a reasonable doubt all of the essential elements of the offense charged, the State is also required to sufficiently allege them and that requirement is not satisfied by the fact that the accused actually knew them and was not misled by the failure to sufficiently allege all of them.

*State v. Tuua*, 3 Haw.App. 287, 293, 649 P.2d 1180, 1184–85 (1982) (citation omitted).

Although the requirement that an accusation must sufficiently allege all of the essential elements of the offense charged derived in part from the article I, section 10 right to a grand jury, we have held that the

> requirement obtains whether an accusation is in the nature of an oral charge, information, indictment, or complaint, and the omission of an essential element of the crime charged is a defect in substance rather than of form. A charge defective in this regard amounts to a failure to state an offense, and a conviction based upon it cannot be sustained, for that would constitute a denial of due process.

*State v. Elliott*, 77 Hawai'i 309, 311, 884 P.2d 372, 374 (1994) (quoting *State v. Jendrusch*, 58 Haw. 279, 281, 567 P.2d 1242, 1244 (1977)).

■ In this context, we have established the following general rule:

> [W]here the statute sets forth with reasonable clarity all essential elements of the crime intended to be punished, and fully defines the offense in unmistakable terms readily comprehensible to persons of common understanding, a charge drawn in the language of the statute is sufficient.

*State v. Schroeder*, 76 Hawai'i 517, 529, 880 P.2d 192, 204 (1994) (quotation marks omit-

ted) (quoting *State v. Torres*, 66 Haw. 281, 288–89, 660 P.2d 522, 527 (1983)).

In the instant case, in compliance with the general rule, Count IV of the complaint tracked the language of HRS § 134–6(a), specifically alleging that Israel "did knowingly possess or intentionally use or threaten to use a firearm while engaged in the commission of a felony...."

The general rule, however, does not apply in all cases. This is so because although "some statutes in our criminal laws so clearly and specifically define[ ] the offense that nothing more is required in [a charge] than the adoption of the language of the statute, other statutes fail to sufficiently describe the crime and [a charge] couched merely in the language of such a statute" would violate due process. *Territory v. Yoshimura*, 35 Haw. 324, 328 (1940). In particular, "where the definition of an offense ... includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition; but it must state the species ... [and] descend to particulars." *Russell v. United States*, 369 U.S. 749, 765, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962). *Cf.* Wright, *Federal Practice and Procedure: Criminal 2d* § 125 at 369–370 (1982) ("If the statute omits an essential element of the offense, or includes it only by implication, then pleading the statutory language will not suffice, and the omitted element must be alleged directly and with certainty.").

■ In HRS § 134–6(a), the word "felony" is used generically. Therefore, it would appear that a complaint that merely tracks the language of HRS § 134–6(a) would be insufficient. Furthermore, decisions from other jurisdictions are consistent with such a conclusion. When confronted with similar statutes that refer to an underlying "crime" or "felony" in the definition of an offense, most courts have held that the specific underlying felony is an essential element of that offense. *See, e.g., People v. Miles*, 96 Ill. App.3d 721, 52 Ill.Dec. 324, 422 N.E.2d 5

---

dated by the federal constitution in state proceedings." *State v. Kane*, 3 Haw.App. 450, 456 n. 4, 652 P.2d 642, 646 n. 4 (1982) (citing *Maxwell v. Dow*, 176 U.S. 581, 20 S.Ct. 448, 44 L.Ed. 597 (1900); *Hurtado v. California*, 110 U.S. 516,

4 S.Ct. 111, 28 L.Ed. 232 (1884)). Thus, the circuit court erred to the extent that it based its order dismissing Count IV of the complaint on the fifth amendment right to a grand jury indictment.

(1981) (armed violence); *State v. Bryant*, 65 Wash.App. 428, 828 P.2d 1121, *review denied*, 119 Wash.2d 1015, 833 P.2d 1389 (1992) (felony-murder); *State v. Sanders*, 280 Or. 685, 572 P.2d 1307 (1977) (burglary).

In *State v. Robins*, 66 Haw. 312, 660 P.2d 39 (1983), however, we departed from the majority rule with regard to burglary cases. In *Robins*, the State challenged the trial court's dismissal of an indictment charging the defendant with Burglary in the First Degree in violation of HRS § 708–810(1)(c).[9] The trial court had dismissed the indictment for failing to allege the specific crime that the defendant allegedly intended to commit when he unlawfully entered the residence. Although recognizing that "the majority of courts in various jurisdictions passing upon whether the crime of burglary has been sufficiently alleged under their varying statutes, have upheld timely challenges to the sufficiency of indictments where the specific crime intended to be committed has not been alleged," *Id.* at 315, 660 P.2d at 41, we declined to follow their lead.

Instead, relying on *Commonwealth v. Madison*, 263 Pa.Super. 206, 397 A.2d 818 (1979), we adopted the minority rule and held that the specific crime that the defendant allegedly intended to commit was not an essential element of burglary. *Robins*, 66 Haw. at 315, 660 P.2d at 41. We reasoned as follows:

> Under §§ 708–810, and –811, HRS, the crime of burglary is committed when a person intentionally either enters, or remains unlawfully on premises with the intent to commit a crime against persons or property. Under certain conditions as specified in §§ 708–810(1)(a), (b) and (c), the crime becomes one of burglary in the first degree. Thus, the crime alleged in the present case is that of intentionally entering or intentionally remaining unlawfully on the described premises; but what makes the act the crime of burglary rather than trespass is the intent to commit a crime against a person or property rights.
>
> However, *the crime intended to be committed on the premises does not have to be committed in order to make the act of entering or remaining the crime of burglary, only the intent must be formed.* Intent, of course, is subjective, although it is usually proved by inference from the acts of the accused. Thus, intentionally entering or intentionally remaining unlawfully upon the described premises with the intent to commit any crime against a person or property rights constituted burglary, and therefore, it cannot logically be said that specifying the particular crime intended to be committed is, under our statutes, an essential element which must be alleged in order to charge the crime of burglary.

*Id.* at 314–15, 660 P.2d at 41 (emphasis added).

The *Robins* holding makes sense in burglary cases because a burglary is complete at the moment an actor "enters or remains unlawfully" in a building with the requisite state of mind, and the State is not required to prove any other conduct, attendant circumstances, or results of conduct. When an offense requires the actual commission of an underlying crime, however, the State is required to prove all of the conduct, attendant circumstances, and results of conduct that comprise the underlying crime. Thus, as the emphasized language above indicates, the *Robins* holding is limited to cases involving offenses, such as burglary, that require only an intent to commit, and not actu-

---

9. At the time Robins's case arose, HRS § 708–810(1)(c) stated in relevant part:

> **Burglary in the first degree.** (1) A person commits the offense of burglary in the first degree if he intentionally enters or remains unlawfully in a building, with intent to commit therein a crime against a person or against property rights, and:
>
> . . . .
>
> (c) He recklessly disregards a risk that the building is a dwelling of another, and the building is such a dwelling.

*Robins*, 66 Haw. at 313, 660 P.2d at 40.

al commission of, an underlying crime; it does not stand for the proposition that the specific underlying crime is not among the essential elements of any offense that generically refers to the commission of a "crime" or "felony." Accordingly, because HRS § 134–6(a) requires the actual commission of an underlying felony, the *Robins* holding is inapposite.

In *People v. Miles, supra,* on the other hand, the Appellate Court of Illinois dealt with a statute that required the actual commission of an underlying felony and that is strikingly similar to HRS § 134–6(a). The offense at issue in *Miles* was armed violence, which was defined as follows:

> Armed violence—Elements of the offense. A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois law.

96 Ill.App.3d at 724, 52 Ill.Dec. at 327, 422 N.E.2d at 8 (quoting Ill.Rev.Stat. ch. 38, para. 33A–2 (1978)). The court held that "where the commission of an underlying offense is a requisite for the commission of a second offense, the information must also contain the elements of the underlying offense." *Id.* at 725, 52 Ill.Dec. at 328, 422 N.E.2d at 9.

Some jurisdictions that require that the specific underlying offense be identified in the charge, however, do not require that all the elements of the underlying felony itself be alleged, as mandated in *Miles.* The courts instead require only that the specific underlying felony be identified by name or statutory reference. *See, e.g., State v. Hartz,* 65 Wash.App. 351, 354–55, 828 P.2d 618, 620–21 (1992) (holding that although the specific underlying felony is an essential element of felony-murder, the government is not required to include the elements of the underlying felony or state the specific means by

which it alleges the defendant committed the underlying felony); *Demouchette v. State,* 591 S.W.2d 488, 490 (Tex.Crim.App.1979) (holding that "an indictment charging one offense during the commission of another crime need not allege the elements of the latter offense"), *cert. denied,* 453 U.S. 913, 101 S.Ct. 3146, 69 L.Ed.2d 996 (1981); *see also State v. Lindsey,* 446 So.2d 1074, 1076 (Fla.1984) (holding that an information charging defendant with offense of burglary that alleged that the defendant had committed an assault was not defective for failing to further allege specific facts that constituted assault).

▇ We believe that where one offense requires the actual commission of a second underlying offense, in order to sufficiently charge the offense, it is incumbent on the State to allege the essential elements of the underlying offense; identification of the offense by name or statutory reference will not suffice. *Cf. Elliott,* 77 Hawai'i at 312, 884 P.2d at 375 (holding that statutory references in charge "did not cure the omission of essential elements in the challenged counts of the charge"). Therefore, we adopt the rule set out in *Miles, supra.*

▇ Accordingly, in the instant case, the complaint was required to "contain the elements of [the underlying felony] whether these elements [were] stated in the [HRS § 134–6(a)] count or in a separate count." *Miles,* 96 Ill.App.3d at 726, 52 Ill.Dec. at 328, 422 N.E.2d at 9. *Cf. State v. Schroeder,* 76 Hawai'i at 530, 880 P.2d at 205.[10] Count IV did not identify the underlying felony or allege the essential elements thereof. Moreover, all of the other counts of the complaint were firearm related offenses and none of them could reasonably be construed to be the underlying felony for the HRS § 134–6(a)

---

10. In *Schroeder,* Count II of the indictment charged the defendant with the offense of kidnapping in violation of HRS § 707–720(1)(c) (1985). One of the elements of kidnapping was that the defendant had the "intent to[ f]acilitate the commission of a felony or flight thereafter[.]" HRS § 707–720(1)(c). Count II simply tracked the language of the kidnapping statute and did not identify the specific felony that the defendant allegedly intended to facilitate the commission of or flee from. Count I, however, charged the defendant with the felony offense of robbery in the first degree and alleged all of the essential elements thereof. We noted that "[t]he 'felony' referred to in Count II must reasonably be construed as the robbery charged in Count I," but "acknowledge[d] that the better practice would have been to modify the word 'felony' in Count II with the phrase 'to wit, robbery, as charged in Count I.'" *Schroeder,* 76 Hawai'i at 530 & n. 20, 880 P.2d at 205 & n. 20.

charge. Thus, Count IV of the complaint did not allege all of the essential elements of an HRS § 134–6(a) offense, thereby failing to ensure that the district court had before it all the facts necessary to find probable cause on that charge and violating Israel's rights under article I, section 10 of the Hawai'i Constitution.

## III. *CONCLUSION*

For the foregoing reasons, we hold that the complaint failed to adequately inform Israel of the nature and cause of the HRS § 134–6(a) charge and failed to ensure that the district court had before it all the facts necessary to find probable cause on that charge. Accordingly, we affirm.