137 P.3d 331

STATE of Hawai'i, Plaintiff–Appellant,

v.

STAN'S CONTRACTING, INC., Roy Shioi, G.W. Murphy Construction Company, John Patrick Henderson and Mark L. Henderson, Defendants–Appellees.

·No. 25394.

Supreme Court of Hawai'i.

June 15, 2006.

18

Adina L.K. Cunningham, Deputy Attorney General, on the briefs, for the plaintiff-appellant, State of Hawai'i.

David J. Minkin, of McCorriston Miller Mukai MacKinnon, on the briefs, Honolulu, for the defendants-appellees, Stan's Contracting and Roy Shioi.

William A. Harrison, of Harrison & Matsuoka, on the briefs, Honolulu, for the defendants-appellees, G.W. Murphy Construction Co., John Patrick Henderson, and Mark L. Henderson.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by LEVINSON, J.

The plaintiff-appellant State of Hawai'i [hereinafter, "the State" or "the prosecution"] appeals from the August 9, 2002 order of the circuit court of the first circuit, the Honorable Reynaldo D. Graulty presiding, dismissing a two-count theft indictment as time-barred and fatally defective. Count I was filed against the defendants-appellees Stan's Contracting, Inc. and Roy Shioi [hereinafter, collectively, "Stan's Contracting"], charging them with theft in the second degree, in violation of Hawai'i Revised Statutes (HRS) § 708–831(1)(b) (1993).[1] Count II of

---

1. HRS § 708–831(1) provides in relevant part that "[a] person commits the offense of theft in the second degree if the person commits theft:

... (b) Of property ... the value of which exceeds $300." Effective July 20, 1998 and July 1, 2005, the legislature amended HRS § 708–831 in

the indictment was filed against the defendants-appellees G.W. Murphy Construction Company, John Henderson, and Mark Henderson [hereinafter, collectively, "Murphy Construction"], charging them with theft in the first degree, in violation of HRS § 708–830.5(1)(a) (1993).[2] On appeal, the prosecution argues that the circuit court erred in concluding: (1) that theft by deception does not include "an element of ... fraud" and is thus not subject to the fraud exception tolling the statute of limitations under HRS § 701–108(3)(a) (Supp.1997);[3] and (2) that the prosecution is required to prove to the grand jury, and to allege in the indictment, that the prosecution began within the time period specified in the fraud exception. We agree with the prosecution that, for the purposes of HRS § 701–108(3)(a), theft by deception does include "an element of fraud" so as to invoke the tolling provisions of that section.

Nevertheless, we hold that when the charged offense is theft by deception, as defined by HRS § 708–830(2) (1993),[4] and the prosecution is relying on the tolling provision of HRS § 701–108(3)(a), relating to "[a]ny offense an element of which is ... fraud," the prosecution must not only allege

the timely date or dates of commission of the offense in the indictment, but also the earliest date of the "discovery of the offense by an aggrieved party or ... a person who has a legal duty to represent [the] aggrieved party." Because the indictment failed to aver the date of the earliest discovery of the alleged offenses, we affirm the circuit court's order dismissing the indictment with prejudice.

## I. BACKGROUND

The present matter arises out of the State's investigation of a Department of Accounting and General Services (DAGS) employee, Fidel Eviota II. Apparently, Eviota submitted multiple invoices totaling more than $700,000 for unperformed construction services ostensibly in accordance with construction contracts and DAGS reimbursement procedures. Stan's Contracting and Murphy Construction [hereinafter, collectively, "the Appellees"] were general contractors involved in two separate contracts that Eviota oversaw in 1996 and 1997. Shioi was a project manager for Stan's Contracting, Inc. and the Hendersons were president and vice president of G.W. Murphy Construction

respects immaterial to the present matter. *See* 2005 Haw. Sess. L. Act 182, §§ 3 and 7 at 579, 580; 1998 Haw. Sess. L. Act 228, §§ 1 and 4 at 775–76.

2. HRS § 708–830.5(1) provides in relevant part that "[a] person commits the offense of theft in the first degree if the person commits theft: ... (a) Of property ..., the value of which exceeds $20,000."

3. HRS § 701–108 provided in relevant part:
 (2) Except as otherwise provided in this section, prosecutions for other offenses are subject to the following periods of limitation:
 (a) A prosecution for manslaughter where the death was not caused by the operation of a motor vehicle must be commenced within ten years after it is committed;
 (b) A prosecution for a class A felony must be commenced within six years after it is committed;
 (c) A prosecution for any other felony must be commenced within three years after it is committed[.]
 ....
 (3) If the period prescribed in subsection (2) has expired, a prosecution may nevertheless be commenced for:

 (a) Any offense an element of which is ... fraud ... within three years after discovery of the offense by an aggrieved party or by a person who has a legal duty to represent an aggrieved party and who is oneself not a party to the offense, but in no case shall this provision extend the period of limitation by more than six years from the expiration of the period of limitation prescribed in subsection (2)[.]

 Effective April 26, 2001 and July 1, 2005, the legislature amended HRS § 701–108 in respects immaterial to the present matter. *See* 2005 Haw. Sess. L. Act 112, §§ 2 and 7 at 294, 296; 2001 Haw. Sess. L. Act 33, §§ 2 and 11 at 57, 60.

4. HRS § 708–830 provides in pertinent part:

 A person commits theft if the person does any of the following:
 ....
 (2) ... obtains, or exerts control over, the property of another by deception with intent to deprive the other of the property.

 Effective May 2, 2001, the legislature amended HRS § 708–830 in respects immaterial to the present matter. *See* 2001 Haw. Sess. L. Act 87, §§ 1 and 5 at 137, 138.

Company at the time. Boyd Sakai, an auditor for the Department of the Attorney General, determined that through a series of bogus change orders—*i.e.*, unwarranted construction purchase orders allowing reimbursement for unexpected costs in a state construction contract—Eviota allegedly funneled at least $6,117.00 through Stan's Contracting and $88,428.00 through Murphy Construction toward the construction of three homes owned by Eviota in M;a'ili. During the course of the investigation, Sakai tracked the payments through a number of parties and accounts, and traveled to California to gather original tissue copies of some of the checks in question.

On May 15, 2002, an O'ahu grand jury returned an indictment: (1) charging Stan's Contracting with one count of theft in the second degree, in violation of HRS § 708–831(1)(b), *see supra* note 1; and (2) charging Murphy Construction with one count of theft in the first degree, in violation of HRS § 708–830.5(1)(a), *see supra* note 2.[5]

On June 19, 2002, Stan's Contracting filed a motion pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 12[6] to dismiss Count I on the grounds: (1) that the prosecution was not commenced within three years of the commission of the offense as required by HRS § 701–108(2)(c), *see supra* note 3; (2) that the evidence put to the grand jury regarding the statute of limitations was insufficient; and (3) that the indictment was fatally defective for failing to allege facts establishing the tolling of the statute of limitations.[7] On July 24, 2002, Murphy Construction filed a joinder in the motion, asking that the circuit court dismiss Count II.

On July 26, 2002, the circuit court conducted a hearing on the motion to dismiss. In response to the Appellees' contention that the indictment was not brought within the statute of limitations, the prosecution made an offer of proof that Ephrain Ho, an investigator for the Department of the Attorney General, was assigned on June 3, 1999 to investigate criminal allegations involving Eviota.[8] In the offer of proof, the prosecution

---

**5.** The indictment read as follows:

COUNT I: On or about the 7th day of July, 1997[,] to and including the 11th day of August, 1997, in the City and County of Honolulu, State of Hawai['']i, Stan's Contracting, Inc. and Roy Y. Shioi, did obtain or exert control over the property of [the State], to wit, U.S. Currency, the value of which exceeds Three Hundred Dollars ... by *deception*, with the intent to deprive [the State] of the property thereby committing the offense of Theft in the Second Degree in violation of [HRS § ] 708–831(1)(b)....

COUNT II: On or about the 10th day of February, 1997, to and including the 29th day of October, 1997, in the City and County of Honolulu, State of Hawai['']i, G.W. Murphy Construction Company, John Patrick Henderson and Mark L. Henderson did obtain or exert control over the property of [the State], to wit, U.S. Currency, the value of which exceeds Twenty Thousand Dollars ..., by *deception*, with intent to deprive [the State] of the property, thereby committing the offense of Theft in the First Degree, in violation of [HRS § ] 708–830.5(1)(a)....

(Emphases added.)

**6.** HRPP Rule 12 provides in relevant part:

(b) **Pretrial Motions.** Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the

judge. The following must be raised prior to trial:

(1) defenses and objections based on defects in the institution of the prosecution;

(2) defenses and objections based on defects in the charge (other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings);

(3) motions to suppress evidence or for return of property;

(4) requests for discovery under Rule 16;

(5) requests for consolidation or severance of charges or defendants under Rules 13 and 14;

(6) motions to dismiss under Rule 8(c) for failure to join related offenses; and

(7) motions to transfer under Rule 21.

**7.** On the same date, Stan's Contracting filed a motion to dismiss Count I with prejudice, also pursuant to HRPP Rule 12, on the ground that "there was insufficient evidence to establish probable cause presented to the grand jury." By virtue of its order granting the Appellees' HRPP Rule 12 motion to dismiss on statute of limitations grounds, the circuit court declined to rule on the second HRPP Rule 12 motion on the ground that it was moot.

**8.** There is no indication on the record as to why Ho and not Sakai was called to testify as to when the alleged criminal involvement of Stan's Con-

stated that Ho would testify that he first heard of the Appellees on June 16, 1999, in an interview with one of the subcontractors through which the bogus change orders were funneled. Ho would further testify, however, that it was not until February 14, 2000 that he first had reason to suspect the Appellees' alleged criminal involvement in Eviota's schemes. The circuit court and the Appellees accepted the offer of proof, the latter entering objections that the offer was insufficient to cure the indictment's alleged insufficiencies.

On August 9, 2002, the circuit court entered findings of fact (FOFs), conclusions of law (COLs), and an order dismissing the indictment with prejudice. The circuit court concluded in relevant part:

2. The Indictment returned by the O[']ahu Grand Jury on May 15, 2002 did not require the prosecution [to] prove, beyond a reasonable doubt as required by [HRS] § 701–114(a) [(1993) [9]], that the [Appellees] *fraudulently* obtained or controlled property of the State ... as an element of the offense of Theft by Deception or that they acted with intent to de-

tracting and Murphy Construction was first suspected.

9. HRS § 701–114, entitled "Proof beyond a reasonable doubt," provides in relevant part:
(1) Except as otherwise provided in section 701–115, [relating to defenses negating penal responsibility] no person may be convicted of an offense unless the following are proved beyond a reasonable doubt:
(a) Each element of the offense;
(b) The state of mind required to establish each element of the offense;
(c) Facts establishing jurisdiction;
(d) Facts establishing venue; and
(e) Facts establishing that the offense was committed within the time period specified in [HRS § ] 701–108[, *see supra* note 3].

10. HRS § 708–800 (1993) provides in relevant part:
"Deception" occurs when a person knowingly:
(1) Creates or confirms another's impression which is false and which the defendant does not believe to be true;
(2) Fails to correct a false impression which the person previously has created or confirmed;
(3) Prevents another from acquiring information pertinent to the disposition of the property involved;

fraud. *See* [HRS] § 708–830(2)[, *supra* note 4].

3. For purposes of tolling the statute of limitations under [HRS] § 701–108(3)(a)[, *see supra* note 3], fraud is not synonymous with "deception" for crimes defined under [HRS ch.] 708. *See* [HRS] § 708–800 (Supp.1996) (different statutory definitions for "deception" and "intent to defraud").[ [10] ]

4. Whereas [HRS ch.] 708 contains numerous statutes expressly requiring "intent to defraud" as an element of the offense necessary to sustain a conviction, Theft by Deception does *not* require the intent to defraud[;] rather, the State must prove a defendant knowingly used deception with the intent to deprive an owner of his/her property. *See State v. Freeman*, 70 Haw. 434, 438–39, 774 P.2d 888, 8[9]1 (1989) (Theft by Deception is not an included offense of Fraudulent Use of a Credit Card because the offenses require different states of mind to be proven beyond a reasonable doubt); ... Hawai['i [Standard] Jury Instruction—Criminal, 10.19

(4) Sells or otherwise transfers or encumbers property, failing to disclose a lien, adverse claim, or other legal impediment to the enjoyment of the property, whether that impediment is or is not valid, or is or is not a matter of official record; or
(5) Promises performance which the person does not intend to perform or knows will not be performed, but a person's intention not to perform a promise shall not be inferred from the fact alone that the person did not subsequently perform the promise.
The term "deception" does not, however, include falsity as to matters having no pecuniary significance....
....
"Intent to defraud" means:
(1) An intent to use deception to injure another's interest which has value; or
(2) Knowledge by the defendant that the defendant is facilitating an injury to another's interest which has value.
Effective June 16, 1997, April 24, 2002, June 28, 2002, and July 1, 2005, the legislature amended HRS § 708–800 in respects immaterial to the present matter. *See* 2005 Haw. Sess. L. Act 182, §§ 2 and 7 at 579, 580; 2002 Haw. Sess. L. Act 224, §§ 4 and 6 at 896; 2002 Haw. Sess. L. Act 45, §§ 1 and 3 at 179; 1997 Haw. Sess. L. Act 198, §§ 3 and 5 at 378.

Theft in the Second Degree—Deception (Instruction for Theft by Deception does not require "fraud" as an element of the offense the finder of fact must find proven beyond a reasonable doubt).

5. Thus, the exception provided in [HRS] § 701–108(3)(a) does not apply to the crime of Theft by Deception, as defined by [HRS] § 708–830(2), wherein fraud is not an element that must be proven beyond a reasonable doubt for conviction. Accordingly, the indictment of [the Appellees] for Theft by Deception on May 15, 2002, for crimes allegedly committed in 1997, occurred beyond the [three-]year time period permitted by [HRS] § 701–108(2)(c).

6. Furthermore, to commence a prosecution pursuant to the statute of limitations exception under [HRS] § 701–108([3)(a)], the State ... must present evidence to the Grand Jury establishing probable cause of *when* the alleged criminal conduct was discovered, *i.e.*, that it was discovered at a time within the statute of limitations exception. *See State v. Ontai*, 84 Hawai'i 56, 63–64, 929 P.2d 69, 76–[77] ( ... 1996)[;] *State v. Arceo*, 84 Hawai'i 1, 13, 928 P.2d 843, 855 ( ... 1996) ("In an indictment, the offense ... may be stated with so much detail of *time*, place, and circumstances and such particulars ... as are necessary to identify the transaction, to bring it within the statutory definition of the offense charged, to show that the court has jurisdiction, and to give the accused reasonable notice of the facts.") ( [emphasis in] original).

7. The State's ... offer of proof ... of ... Ho's discovery of the alleged thefts on June 16, 1999 failed to satisfactorily identify when the proper Complainant (DAGS) first discovered the alleged thefts. Thus, the offer of proof of ... Ho's testimony could not cure the evidentiary defect arising from the failure to present any evidence to the Grand Jury as to the date of discovery of the alleged offense. *Cf. Arceo*, 84 Hawai'i at 13 [928 P.2d 843].

8. Accordingly, the quantum of evidence presented to the O[']ahu Grand Jury was insufficient to invoke the exception

provided in [HRS] § 701–108(3)(a) and allow prosecution of the Defendants beyond the [three-]year time limitation of [HRS] § 701–108(2)(c). *Id.*

9. Lastly, an indictment must allege information that provides defendants with reasonable notice of the facts necessary for the preparation of an adequate defense, including facts that provide notice of possible punishment and the statute of limitations. *See* [HRPP] Rule 7(d) ("The charge shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."); *State v. Kaakimaka*, 84 Hawai'i 280, 29[5], 933 P.2d 617, 6[32] (1997) (Indictment alleging conspiracy violated Due Process when charging instrument failed to provide defendant notice of "the possible punishment and the statute of limitations").

10. If the State ... commences a prosecution utilizing a[ ] statute of limitations exception in [HRS] § 701–108(3)(a), information must be alleged in the Indictment to demonstrate the statute of limitations was tolled. *See People v. Strait*, [72 Ill.2d 503, 21 Ill.Dec. 365] 381 N.E.2d 692, 693 (Ill. 1978) (Dismissing indictment pursuant to long standing rule requiring facts invoking exceptions to statute of limitations be averred in charging instrument); *Powers v. State*, 718 So.2d 255, 255 (Fla.[Ct.]App. 1998) (Information must allege on its face facts showing statute tolled); *Moss v. State*, [220 Ga.App. 150] 469 S.E.2d 325, 326 (1996) (same); *People v. Crosby*, [58 Cal.2d 713, 25 Cal.Rptr. 847] 375 P.2d 839, 846 (1962) (same); *Bustamante v. Dist. Court*, 329 P.2d 1013, 1016–[ ]17 (Colo. 1958); *State v. Jones*, 775 P.2d 183, 185[-]86 (Kan.[Ct.]App.1989) (same); *State v. Bove[e]*, [76 Or.App. 572] 710 P.2d 786, 788 (Or. [Ct.] App. 1985[)]) (same); *Ex Parte County*, 601 S.W.2d 357, 357–58 (Tex.C[t].App.1980) (same).

11. Thus, the failure to provide information of the date of discovery of the alleged crimes[ ] necessary to invoke the exception in [HRS] § 701–108(3)(a), rendered the Indictment ... fatally defective. *See* ... *Kaakimaka*, 84 Hawai'i at 29[5, 933 P.2d at 632].

(Footnotes omitted.) (Emphases in original.) The circuit court then granted the Appellees' motion and dismissed the indictment against them with prejudice.

Following a September 5, 2002 grant by the circuit court of an extension, the prosecution filed a timely notice of appeal on October 8, 2002.

## II. STANDARDS OF REVIEW

### A. Findings of Fact and Conclusions Of Law

In this jurisdiction, a trial court's [FOFs] are subject to the clearly erroneous standard of review. An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction that a mistake has been committed.

A[COL] is not binding upon an appellate court and is freely reviewable for its correctness. This court ordinarily reviews COLs under the right/wrong standard. Thus, a COL that is supported by the trial court's FOFs and that reflects an application of the correct rule of law will not be overturned. However, a COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependant upon the facts and circumstances of each individual case.

Casumpang v. ILWU Local 142, 108 Hawai'i 411, 419, 121 P.3d 391, 399 (2005) (some brackets added and some in original) (quoting Allstate Ins. Co. v. Ponce, 105 Hawai'i 445, 453, 99 P.3d 96, 104 (2004)).

### B. Interpretation Of Statutes

"[T]he interpretation of a statute . . . is a question of law reviewable de novo." . . . Arceo, 84 Hawai'i [at] 10, 928 P.2d [at] 852. . . .

Gray v. Admin[.] Dir[.] of the Court, 84 Hawai'i 138, 144, 931 P.2d 580, 586 (1997). Furthermore, our statutory construction is guided by established rules:

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [(1993)]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

Gray, 84 Hawai'i at 148, 931 P.2d at 590 (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it . . . to discover its true meaning." HRS § 1–15(2). . . . "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993).

State v. Koch, 107 Hawai'i 215, 220–21, 112 P.3d 69, 74–75 (2005) (some internal citations omitted) (some brackets and ellipses added and some in original) (quoting State v. Kaua, 102 Hawai'i 1, 7–8, 72 P.3d 473, 479–480 (2003) (quoting State v. Rauch, 94 Hawai'i 315, 322–23, 13 P.3d 324, 331–32 (2000) (quoting State v. Kotis, 91 Hawai'i 319, 327, 984 P.2d 78, 86 (1999) (quoting State v. Dudoit, 90 Hawai'i 262, 266, 978 P.2d 700, 704 (1999) (quoting State v. Stocker, 90 Hawai'i 85, 90–91, 976 P.2d 399, 404–05 (1999) (quoting Ho v. Leftwich, 88 Hawai'i 251, 256–57, 965 P.2d 793, 798–99 (1998) (quoting Korean Buddhist Dae Won Sa Temple v. Sullivan, 87 Hawai'i 217, 229–30, 953 P.2d 1315, 1327–28 (1998)))))))).

## III. DISCUSSION

### A. Theft By Deception And The Meaning Of "Fraud" In HRS § 701–108(3)(a)

■ This court has consistently reaffirmed the proposition that "where the terms of a statute are plain, unambiguous and explicit, we are not at liberty to look beyond that language for a different meaning. Instead, our sole duty is to give effect to the statute's plain and obvious meaning." State v. Yamada, 99 Hawai'i 542, 553, 57 P.3d 467, 478 (2002) (quoting State v. Richie, 88 Hawai'i 19, 30, 960 P.2d 1227, 1238 (1998)).

■ Furthermore, this court has stated that "where there is no ambiguity in the language of a statute, and the literal application of the language would not produce an absurd or unjust result, clearly inconsistent with the purposes and policies of the statute, there is no room for judicial construction and interpretation...." In re John Doe, Born on July 3, 1995, 109 Hawai'i 399, 408, 126 P.3d 1086, 1095 (2006) (citation and internal quotation signals omitted).

However, "[w]hen there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists." Gray, 84 Hawai'i at 148, 931 P.2d at 590. In construing an ambiguous statute, we may resort to extrinsic aids in determining legislative intent. Id. This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." HRS § 1–15(2); Koch, 107 Hawai'i at 220–21, 112 P.3d at 74–75.

■ The prosecution's argument for a review of the circuit court's interpretation of the term "fraud" in HRS § 701–108(3)(a) can be reduced to two grounds: (1) that the

meaning of the term is ambiguous, in that the term "fraud" is multi-faceted and inclusive of more criminal activities than those offenses expressly employing that specific word; and (2) that, assuming arguendo the plain language requires a strict construction, the results are absurd and unjust. We agree with the prosecution on both grounds.

### 1. An ambiguity exists as to the scope of the term "fraud" in HRS § 701–108(3)(a).

#### a. The parties' arguments

Murphy Construction asserts that the language of the tolling provision is unambiguous—that either fraud must be expressly alleged in the indictment or must be contained in the language of the statute for the offense to qualify as a "crime, an element of which is fraud."[11] It argues that the legislature could have crafted language, for example, applying the tolling provision to "any offense committed through the use of any fraudulent act or concealed by any means of fraud," but chose not to.

Stan's Contracting adds that, because HRS § 708–800, see supra note 10, provides a definition of "intent to defraud" that is distinct from the definition of "deception" contained in the same section, theft by deception is not a species of fraud within the meaning of the tolling provision.

The prosecution responds that "fraud" cannot be so facilely construed as to exclude "deception," noting that "intent to defraud" is, in fact, defined as "an intent to use deception to injure another's interest which has value," HRS § 708–800. (Emphasis added by prosecution.) Deception, the prosecution argues, is therefore the characteristic that

---

11. In line with this argument, Stan's Contracting cites to Hawai'i Standard Jury Instructions, Criminal 10.19 (Theft in the Second Degree: Deception), pointing out that the word "fraud" is not an element enumerated therein. The instruction provided in relevant part:

> There are four material elements of the offense of Theft in the Second Degree, each of which the prosecution must prove beyond a reasonable doubt.
> These four elements are:
> 1. That, on or about (date) in the [City and] County of (name of county), the Defendant

obtained or exerted control over the property of another; and
2. That the Defendant did so by deception; and
3. That the Defendant did so with the intent to deprive the person of property; and
4. That the Defendant believed the value of the property exceeded $300.

(Emphasis and brackets in original.) Effective February 28, 2006, the instruction has been amended to add a fifth element, i.e., that the value of the property did in fact exceed $300.

imbues "intent to defraud" with its requisite state of mind; in other words, without "deception," "intent to defraud" statutes are merely general intent statutes requiring only that "the defendant knowingly or intentionally injure another's interest which has value." Therefore, the prosecution concludes, if deception does not contain within it a fraudulent component, then neither does "intent to defraud."

The prosecution further notes that there is no precise definition of the term "fraud"—as opposed to an "intent to defraud"—in the Hawai'i Penal Code (HPC). The prosecution highlights the requirement of HRS § 701–104 (1993) that words be taken "in their usual sense" absent statutory definition and cites *Black's Law Dictionary* at 788 (4th ed.1968), defining "fraud" in part as "a false representation of a matter of fact ... which deceives and is intended to deceive another," and the *Oxford Concise English Dictionary* at 562 (10th ed.1999), which defines "fraud" as "(1) wrongful or criminal deception intended to result in financial or personal gain [or] (2) a person or thing intended to deceive." [12]

The prosecution delves into the Model Penal Code (MPC) for the historic roots of fraud and theft by deception. [13] It points out that the MPC drafters consolidated false pretenses and larceny by trick into theft by deception and that false pretenses and larceny by trick were a species of fraud dating back to the 1757 English statute of false pretenses. (Citing MPC § 223.3 cmt. (Proposed Official Draft 1962); Wayne R. La-Fave & Austin W. Scott, Jr., *Substantive Criminal Law* § 8.7(a) (1986).)

Murphy Construction counters that while the MPC discusses theft by deception in MPC § 223, it analyzes crimes of fraud in MPC § 224, demonstrating that the treatment of fraudulent behavior in MPC § 224 is designed to *complement* the coverage of theft offenses set forth in MPC § 223. (Citing MPC § 224 introductory note (American Law Institute 1980).) Murphy Construction argues that the drafters of the MPC viewed theft by deception as a separate species of crime distinct from fraud and hence not within the meaning of "fraud" in the tolling statute.

In reply, the prosecution points out that, according to the introductory notes to MPC § 224, two of the fraud offenses—simulating objects and securing execution of documents by deception—are both characterized as lesser included offenses of theft by deception. The prosecution argues that if, as the Appellees contend, crimes of fraud are addressed in MPC § 224, then fraud offenses are included within the definition of theft by deception, and theft by deception itself becomes a species of fraud.

Stan's Contracting invokes the commentary to HRS § 708–830, *see supra* note 4, to establish that theft by deception does not contain an element of fraud. It argues that paragraph (1) is the repository of the traditional common law fraud offenses of larceny, embezzlement, and fraudulent conversion and that because the defendants were charged under paragraph (2)—through the use of the term "deception" in the indictment, *see supra* note 5—there is no element of fraud inherently present in the charged offense.

The prosecution retorts that the same commentary to HRS § 708–830 cited by the Appellees states that paragraph (2) "covers the same kind of deprivation to a property owner as that covered in [paragraph] (1), except that the deprivation here proscribed is accomplished by deception." Therefore, the prosecution argues, if Stan's Contracting is correct, then HRS § 708–830(2) is a *more* fraudulent form of theft that includes the

---

**12.** The prosecution further argues that this court has in the past resisted a rigid or narrow definition of fraud. (Quoting *Von Holt v. Izumo Taisha Kyo Mission of Hawaii*, 42 Haw. 671, 722 (1958) ("[I]t has been stated that fraud is better left undefined.... [O]wing to the multiform character of fraud and the great variety of attendant circumstances no definition which is all inclusive can be framed, but each case must be determined on its particular facts.").) (Citing 37 Am.Jur.2d *Fraud and Deceit* § 1 (2001).)

**13.** In 1972, the legislature reformed the HPC, including the provisions under discussion, based on the Model Penal Code. H.B. 20, 6th Leg., Reg. Sess. (1972); *see also* Commentary to HRS §§ 708–830 to –833.

fraud crimes of paragraph (1), accomplished as they are through deception.

The Appellees also cite to this court's holding in *Freeman*, 70 Haw. at 438–39, 774 P.2d at 891, that theft by deception was not a lesser included offense of the charge of fraudulent use of a credit card, because the two crimes required different culpable states of mind. The prosecution urges that *Freeman* is not dispositive of the question whether theft by deception is a crime of fraud, but only of the proposition that "intent to defraud" and "intent to deceive" are not equivalent states of mind; the correct analysis, the prosecution maintains, must focus on whether theft by deception entails a requisite state of mind that is compatible with the historical meaning of "fraud."

Murphy Construction, in turn, insists that the correct analysis is not whether fraud subsumes a quality of deception, but whether deception alone is fraud.[14] Both answering briefs cite *Shoppe v. Gucci America, Inc.*, 94 Hawai'i 368, 386, 14 P.3d 1049, 1067 (2000), for the proposition that while deception may be a *component* of fraud, fraud requires the additional element of detrimental reliance. The prosecution's response is twofold: (1) criminal fraud need not conform to civil fraud (citing HRS § 701–102 (1993)) ("No behavior constitutes an offense unless it is a crime or violation under this Code or another statute of this state."); and (2) in the language of HRS § 708–800, *see supra* note 10, neither "intent to defraud" nor "deception" require that detrimental reliance be proven.[15]

**b. *Analysis***

HRS § 708–800 does not contain a definition of the term "fraud." The circuit court, nevertheless, determined that the existence of separate definitions of "intent to defraud" and "deception" justified a conclusion that theft by deception did not contain an element of fraud for the purposes of the tolling statute. However, in doing so, the circuit court glossed over an important aspect of the relationship between these two terms. "Deception" is defined for the purposes of theft by deception as occurring "when a person knowingly: . . . (2)[f]ails to correct a false impression which the person previously created or confirmed," involving matters having pecuniary significance. HRS § 708–800, *see supra* note 10. "Intent to defraud," in turn, is defined as "[a]n intent to use *deception* to injure another's interest which has value . . . ." *Id.* (emphasis added). Boiled down, "intent to defraud" is theft—*i.e.*, injuring another's interest having pecuniary significance—through the use of deception.[16] Inasmuch as defrauding is defined as theft by deceiving, it is difficult to conclude that theft by deception is not a fraudulent act within the tolling provisions of HRS § 701–108(3)(a), *see supra* note 3.

In our view, the foregoing analysis demonstrates at least that there is doubt, indistinctiveness, and uncertainty with respect to the meaning of the term "fraud," as it appears in HRS § 701–108(3)(a), and that, therefore, an ambiguity exists as to whether theft by de-

**14.** Murphy Construction, in arguing that fraud encompasses more than mere deception by including the element of false or fraudulent representations, also cites to *Wolfer v. Mut. Life Ins. Co. of New York*, 3 Haw.App. 65, 76, 641 P.2d 1349, 1357 (1982): "Actual fraud contemplates *intentional deception*, including false and fraudulent misrepresentations." (emphasis added by Murphy Construction). This passage, however, cited as well by the prosecution in its opening brief, serves more to bolster the prosecution's argument that actual fraud includes precisely the deception at issue in this case.

**15.** The prosecution also notes that if civil fraud can serve as a frame of reference for analysis, then according to *Cosmo. Fin. Corp. v. Runnels*, 2 Haw.App. 33, 625 P.2d 390 (1981), "a statement or claim or document is fraudulent if it is falsely

made, or caused to be made, with the intent to deceive." 2 Haw.App. at 39, 625 P.2d at 396 (citing *Kawaihae v. Hawaiian Ins. Cos.*, 1 Haw. App. 355, 359–60, 619 P.2d 1086, 1090 (1980)).

**16.** While in *Freeman*, this court held that "intent to defraud" is not coterminous with "intent to deprive" for purposes of determining that theft by deception was not a lesser included offense of fraudulent use of a credit card, 70 Haw. at 438–39, 774 P.2d at 891, we have never addressed the question whether the intent to deprive through the use of deception is a *type* of fraudulent state of mind. We believe that it is, particularly in light of the traditionally intertwined usage of the terms "fraud" and "deception," discussed *supra* in part III.A.1.a, at least for the purposes of tolling the statute of limitations under HRS § 701–108(3)(a).

ception falls under the tolling provision. We may therefore examine the legislative history of the statute "as an interpretive tool in determining legislative intent." *Gray*, 84 Hawai'i at 151, 931 P.2d at 593 (internal quotations omitted). We do this "in order to harmonize the wording of the statute with the purposes and policies underlying [the provision]." *Peterson v. Hawaii Elec. Light Co.*, 85 Hawai'i 322, 328, 944 P.2d 1265, 1271 (1997).

### 2. *The circuit court's interpretation of "fraud" yields absurd and unjust results.*

In addition to arguing that an ambiguity exists as to the plain meaning of fraud in the tolling statute, the prosecution further contends that the circuit court's interpretation of fraud yields absurd and unjust results. We concur.

The prosecution argues that the circuit court's narrow interpretation of "fraud" in the tolling statute excludes a sizeable number of offenses involving clearly fraudulent behavior. (Citing, *inter alia*, HRS §§ 19–3 (1993)) ("Election frauds"), 19–3.5 (1993) ("Voter fraud"), 231–34 (Supp.1999) ("Attempt to defeat or evade tax"), 346–43.5 (1993) ("Medical assistance frauds"), 431:10C–307.7 (Supp.2000) ("Insurance fraud"), 708–870 (1993) ("Deceptive business practices"), 708–871 (1993) ("False advertising"), 708–873 (1993) ("Defrauding secured creditors"), 708–874 (1993) ("Misapplication of entrusted property"), and 708–8200 (1993) ("Cable television service fraud"). The prosecution points out that the commentaries accompanying two of the offenses within the rubric of "Business and Commercial Frauds," HRS §§ 708–871 and 708–873, suggest that they are lesser or inchoate misdemeanor forms of theft by deception. The circuit court's interpretation of HRS § 701–108(3)(a), however, would result in these misdemeanors being tolled, while the felony offense of theft by deception would not, merely due to the presence or absence of the phrase "intent to defraud," thereby rendering the scope of the tolling provision illogically restrictive. A more rational reading of "fraud," the prosecution argues, would encompass statutes that describe fraudulent states of mind or conduct but that may not *expressly* contain the word "fraud" or "defraud."

The Appellees counter that while the circuit court's interpretation of HRS § 701–108(3)(a) excludes a number of statutes arguably dealing with fraudulent practices, it nonetheless does apply to an equal number of offenses involving fraud, which demonstrates that the circuit court's interpretation of the term is not illogically restrictive.[17]

Nevertheless, the fact that the circuit court's interpretation of the tolling statute extends to a number of statutes involving fraudulent behavior is not itself dispositive of the issue. More important is that the circuit court's interpretation *excludes* felonies from tolling but *includes* misdemeanors by creating a false dichotomy between offenses that expressly contain the phrase "intent to defraud" in the body of the statute and those that do not. The interpretation urged by the prosecution would eliminate the absurd and unjust result of subjecting those charged with misdemeanor infractions such as falsifying business records, making false statements concerning vaccinations, or tampering with commercial scales to extended exposure to prosecution while those charged with voter fraud, election fraud, insurance fraud, tax

---

17. Stan's Contracting cites a host of offenses requiring an "intent to defraud": HRS §§ 159–52(e) (1993) (meat inspection fraud); 325–37 (1993) (vaccinations and immunization fraud); 329–42(a)(3)(A) (Supp.2000) (controlled substances fraud); 346E–16 (Supp.1994) (nursing facility tax fraud); 386–98(a) (Supp.1996) (workers' compensation fraud); 486–32(a)(1) (1993) (measurements fraud); 708–830(8) (Supp.2001) (felony shoplifting); 708–835.6 (Supp.2001) (telemarketing fraud); 708–851 to –852 (Supp.1997) (first and second degree forgery); 708–853 (1993) (third degree forgery); 708–855 (1993) (criminal simulation); 708–856 (1993) (obtaining signatures by deception); 708–858 (1993) (fraudulent suppression of a testamentary or recordable instrument); 708–872 (1993) (falsifying business records); 708–891 to –891.5 (Supp.2001) (computer fraud); 708–8100 (1993) (fraudulent use of a credit card); 708–8100.5 (1993) (fraudulent encoding of a credit card); 708–8102(4) (1993) (credit card theft); 708–8103 (1993) (credit card fraud by a provider of goods and services); 708–8202 to –8203 (Supp.1996) (telecom fraud).

fraud, and other serious crimes would be afforded early relief from the threat of prosecution.

Therefore, wholly independent of the statutory ambiguity discussed *supra*, and mindful of the language of HRS § 1–15(3) that "[e]very construction which leads to an absurdity shall be rejected," we may look beyond the language of the tolling provision to determine legislative intent. *See State v. Haugen*, 104 Hawai'i 71, 77, 85 P.3d 178, 184 (2004) ("Inasmuch as a literal construction would produce an absurd and unjust result, we are willing to look beyond the plain, obvious, and unambiguous language of the statute and ascertain its underlying legislative intent.") (Internal quotations, citations, and brackets omitted.).

3. *The legislature intended that HRS § 701–108(3)(a) apply to theft by deception.*

 While we "construe penal statutes narrowly, [we analyze] them in the light of precedent, legislative history, and common sense." *State v. Soto*, 84 Hawai'i 229, 249, 933 P.2d 66, 86 (1997) (citing *State v. Gaylord*, 78 Hawai'i 127, 137, 890 P.2d 1167, 1177 (1995)). "[T]he strict construction rule does not permit the court to ignore · legislative intent, nor require the court to reject that construction that best harmonizes with the design of the statute or the end sought to be achieved." *Gaylord* 78 Hawai'i at 138–39, 890 P.2d at 1178–79 (citation and internal quotations signals omitted).

The prosecution maintains that the legislature intended that any statutory offense involving fraudulent behavior rendering the uncovering and prosecution of an offense particularly challenging should fall under the tolling provision, not just those that expressly contain the term "fraud." The prosecution cites Senate Judiciary Committee comments pertaining to the 1986 amendments to HRS § 701–108(3)(a):

Cases involving fraud or breach of fiduciary duty are difficult to prosecute because *evidence of the criminal activity is often hidden* in misleading bookkeeping and fraudulent records. *Extending the statute of limitations allows more time to complete the extensive investigation required to gather and analyze records and documents* in order to discover the exact nature and extent of criminal activity.

Sen. Stand. Comm. Rep. No. 1084–86, in 1986 Senate Journal, at 1283 (emphases added). The prosecution notes that the history of the present case exemplifies the difficulties envisioned by the legislature.

HRS § 701–104 requires that construction of the penal code be "with reference to the purpose of the provision," an obligation reinforced by the commentary to HRS § 701–104, which states that "[t]his section, read in conjunction with § 701–103, is intended to assure that this Code will be construed by the courts in such a way as to effectuate the declared purposes of the law."

A review of the legislature's declared purpose of the tolling statute supports a conclusion that theft by deception falls within the fraud exception set forth in HRS § 701–108(3)(a).

The legislature has amended HRS § 701–108(3)(a) twice since its enactment in 1972. Effective May 30, 1986, the legislature extended the tolling provision from one year following discovery of the offense to two years and the maximum tolling period from three years to six years. *See* 1986 Haw. Sess. L. Act 296, §§ 1 and 4 at 543. Effective June 12, 1996, the legislature further extended the tolling period, from two years to three, and stated more expressly that the six-year extension for discovery of the offense was consecutive to the normal three-year period under HRS § 701–108(2), clarifying that prosecution for crimes involving fraud and fiduciary breaches may be possible for up to nine years from the date of the incident giving rise to the charged offense. *See* 1996 Haw. Sess. L. Act 148, §§ 1 and 3 at 325–26.

In recommending passage of the 1986 amendments, the House Judiciary Committee noted that "[t]hese cases often require review of financial records covering several years and sometimes records are difficult to obtain because they are in the defendant's possession." Hse. Stand. Comm. Rep. No. 434–86, in 1986 House Journal, at 1184.

Similar sentiments were expressed by the Senate Judiciary Committee, *see supra.*

In recommending passage of the 1996 amendments, the Senate Judiciary Committee stated:

> [F]or crimes involving fraud and breach of fiduciary duty, it sometimes takes several years before the crime is uncovered. The discovery process for documentary evidence is often tedious, voluminous and difficult to unravel.... Since these complex crimes sometimes take years to uncover, investigate, and prove, your Committee believes these factors warrant a reasonable extension of the statute of limitations.

Sen. Stand. Comm. Rep. No.2030, in 1996 Senate Journal, at 987. The House Judiciary Committee, for its part, noted that

> the investigation of fraud can be a complicated and long, drawn-out process in which the investigator follows the paper trail step-by-step as each new lead is uncovered. Fraud cases can involve many victims and large losses. These cases should not be ended before getting off the ground because of statutory time limitations.

Hse. Stand. Comm. Rep. No. 1015–96, in 1996 House Journal, at 1430. The effect of these two amendments has been to extend the time available to prosecute crimes characterized by cover-up, deception, and complex financial fact gathering.

The present matter is an exemplar of the type of crime the legislature envisioned. Eviota has been convicted of using the Appellees as conduits through which he issued false change orders pursuant to state construction contracts. By way of these fraudulent change orders, he billed the State as much as $700,000 for work never scheduled or completed and used the proceeds to build three homes for himself in M;aʻili. Uncovering the circumstances of Eviota's false billings involving the Appellees obliged Sakai, a certified public accountant, to track multiple payments to bogus subcontractors, entailing, among other things, a trip to California to gather original tissue copies of some of the checks. Application of the common meaning of the term "fraud" tolls the statute of limitations with respect to crimes employing deception and subterfuge, including theft by deception, thereby allowing the prosecution sufficient time to investigate and charge parties to schemes like Eviota's in clear accord with the legislature's intent.

4. *Case law from this and other jurisdictions supports the conclusion that theft by deception contains an "element of fraud."*

In *Wolfer v. Mut. Life Ins. Co. of New York,* 3 Haw.App. 65, 641 P.2d 1349 (1982), the Intermediate Court of Appeals stated that "[a]ctual fraud contemplates intentional deception, including false and fraudulent misrepresentations." 3 Haw.App. at 76, 641 P.2d at 1357; *see also Keanu v. Kamanoulu,* 20 Haw. 108 (1910) (concluding that fraud "includes ... misrepresentation ... in all its varied forms, drawing this inference without departure from any rules of law or common experience"); *In re a Male Minor Child, Born on February 14, 1971,* 1 Haw.App. 364, 371, 619 P.2d 1092, 1097 (1980) ("By its nature, fraud involves deception, which may not come to light during the year following entry of a decree."); *Kawaihae v. Hawaiian Ins. Cos.,* 1 Haw.App. 355, 359–60, 619 P.2d 1086, 1090 (1980) (" 'A statement ... is "fraudulent" if it was falsely made, or caused to be made, with the intent to deceive. Fraud is ... a false representation of a matter of fact ... which deceives and is intended to deceive another so that he shall act upon it to his legal injury.' ") (quoting *Black's Law Dictionary* (5th ed.1979)).

Federal authority is in accord. In *Lord v. Goddard,* 54 U.S. 198, 211, 13 How. 198, 14 L.Ed. 111 (1851), the United States Supreme Court put it succinctly: "Fraud means an intention to deceive." More recent decisions of the courts of appeals are of the same bent. *See McClellan v. Cantrell,* 217 F.3d 890, 893 (7th Cir.2000) (noting that *Collier on Bankruptcy* 523–25 (15th ed.2000), "while assuming ... that 'actual fraud' involves a misrepresentation, defines the term much more broadly—as 'any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another' "); *Kenty v. Bank One,* 92 F.3d 384, 389–90 (6th Cir.1996) ("A scheme to defraud consists of intentional fraud, consisting in

deception intentionally practiced to induce another to part with property. . . . To allege intentional fraud, there must be proof of misrepresentations or omissions which were reasonably calculated to deceive persons of ordinary prudence and comprehension.") (internal quotation signals and citations omitted); *United States v. Dial*, 757 F.2d 163, 168 (7th Cir.1985) ("Fraud in the common law sense of deceit is committed by deliberately misleading another by words, by acts, or . . . by silence."); *Blachly v. United States*, 380 F.2d 665, 671 (5th Cir.1967) (defining a scheme to defraud as one "accomplished by the most base form of deceit—a misrepresentation").

Finally, *State v. Wilson*, 573 N.W.2d 248, 252 (Iowa 1998), and *Commonwealth v. Volk*, 298 Pa.Super. 294, 444 A.2d 1182, 1187 (1982), both interpret theft by deception and tolling provisions similar to Hawaii's and conclude—in *Wilson*, without dispute between the parties—that fraud is a component of theft by deception.

### 5. *Pursuant to the definition of "element" in HRS § 702–205, "deception" is part of the conduct element of theft by deception.*

Ultimately, any determination that theft by deception contains an element of fraud must comport with the definition of "element" set forth in HRS § 702–205 (1993): "such (1) conduct[;] (2) attendant circumstances[;] and (3) results of conduct, as: (a) [a]re specified by the definition of the offense[;] and (b) [n]egative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction)."

In *State v. Aiwohi*, 109 Hawai'i 115, 126–28, 123 P.3d 1210, 1221–23 (2005), we revisited the distinctions between conduct, attendant circumstances, and results of conduct. *See also* 109 Hawai'i at 130–33, 123 P.3d at 1225–28 (Levinson, J., concurring); 109 Hawai'i at 133–37, 123 P.3d at 1228–32 (Acoba, J., concurring). As we noted in *Aiwohi*, " 'the distinction between conduct and attendant circumstances or result is not always a bright one.' " 109 Hawai'i at 126, 123 P.3d

at 1222 (quoting Model Penal Code § 2.02 cmt. 3 (1962)). Nevertheless, in this instance it is evident that deception represents a conduct element of HRS § 708–830(2) in that it is the accused's deceptive conduct in securing the property that gives rise to penal responsibility, and, pursuant to our analysis, *supra*, the common meaning of the term "fraud" encompasses intentionally deceptive conduct. Therefore theft by deception, containing an element of fraudulent conduct, invokes the tolling provision of HRS § 701–108(3)(a) as a "crime, an element of which is fraud."

### 6. *Conclusion*

Accordingly, we hold that the circuit court erred in concluding that theft by deception does not constitute a form of fraud so as to qualify for the tolling provisions of HRS § 701–108(3)(a). We hold that for purposes of the tolling provision, the fraudulent component of HRS § 708–830(2) is the use of deception in the taking of property.

### B. *The Prosecution Must Aver Limitation– Tolling Facts In The Indictment.*

#### 1. *The prosecution's contentions*

■■■ The prosecution argues that the requirements of the due process clause of article 1, section 14 of the Hawai'i Constitution are fulfilled when an indictment " 'contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he or she must be prepared to meet' " (quoting *State v. Wells*, 78 Hawai'i 373, 379–80, 894 P.2d 70, 76–77 (1995) (brackets omitted)) and that, if the indictment tracks the language of the statute alleged to have been violated, the indictment is sufficient (citing *State v. Silva*, 67 Haw. 581, 585, 698 P.2d 293, 296 (1985); *State v. Treat*, 67 Haw. 119, 680 P.2d 250 (1984); *State v. Robins*, 66 Haw. 312, 660 P.2d 39 (1983)).

The prosecution also asserts that the HPC does not require it to allege limitation-tolling facts in the indictment. The prosecution argues that if, pursuant to HRS § 806–29 (1993),[18] it is not required to aver facts as to

---

18. HRS § 806–29 provides:

**Exceptions need not be negatived.** No indictment for any offense created or defined by

exceptions or excuses contained *within* a statute describing an offense, *a fortiori* it need not aver facts as to non-elements of the offense contained in separate statutes. Rather, the prosecution insists, " 'limitations are imposed by independent statute.... [T]hey are matters of defense, and avoidance need not be alleged in the indictment.' " (Quoting *People v. Kohut,* 30 N.Y.2d 183, 331 N.Y.S.2d 416, 282 N.E.2d 312, 315 (1972).) Statutes of limitation are not fundamental rights, the prosecution urges, nor are they jurisdictional, but they may be waived by a defendant, reflecting their status as defenses rather than fundamental elements of an offense. (Citing *State v. Timoteo,* 87 Hawai'i 108, 113–14, 952 P.2d 865, 870–71 (1997).) The prosecution insists that it met the requirements of HRS § 806–34 (1993) [19] simply by setting forth the charge with sufficient detail as to time, place, and circumstances so as to give the accused reasonable notice of the facts.

2. *The information presented to the grand jury was insufficient to satisfy article I, sections 10 and 14 of the Hawai'i Constitution.*

Article I, section 10 of the Hawai'i Constitution provides in relevant part that "[n]o person shall be held to answer for a capital or otherwise infamous crime[ ] unless on a presentment or indictment of a grand jury or upon a finding of probable cause after a preliminary hearing held as provided by law." [20] We have said that "an indictment must be specific enough to ensure that the grand jury had before it all the facts necessary to find probable cause." *State v. Israel,*

78 Hawai'i 66, 73, 890 P.2d 303, 310 (1995) (citing *State v. Kane,* 3 Haw.App. 450, 457, 652 P.2d 642, 647 (1982)). Furthermore, HRS § 806–34, *see supra* note 19, states that an indictment must set forth the details of the transaction involving the defendant "with so much detail of time, place, and circumstances ... as are necessary to identify the transaction, to bring it within the statutory definition of the offense charged, to show that the court has jurisdiction, and to give the accused reasonable notice of the facts." This requirement is grounded in article I, section 14 of the Hawai'i Constitution, which requires that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation." [21] In order to honor this right, an indictment must "apprise the accused of the charges against him, so that he may adequately prepare his defense." *State v. Vanstory,* 91 Hawai'i 33, 44, 979 P.2d 1059, 1070 (1999) (quoting *State v. Sword,* 68 Haw. 343, 345, 713 P.2d 432, 434 (1986)). Nevertheless, we have not yet identified which of the substantive components set forth in HRS § 701–114(1), *see supra* note 9, must be factually alleged in the indictment to ensure that the due process requirement of article I, section 14 is fulfilled and, pursuant to article I, section 10, "to ensure that the grand jury has before it all the facts necessary to find probable cause." *Israel,* 78 Hawai'i at 73, 890 P.2d at 310.

a. *Elements of the charged offense and the state of mind of the accused*

An indictment must enable a grand jury to determine that probable cause exists

---

statute shall be deemed objectionable for the reason that it fails to negative any exception, excuse, or proviso contained in the statute creating or defining the offense. The fact that the charge is made shall be considered as an allegation that no legal excuse for the doing of the act existed in a particular case.

19. HRS § 806–34 provides:

**Sufficiency of averments as to offense and transaction.** In an indictment the offense may be charged either by name or by reference to the statute defining or making it punishable; and the transaction may be stated with so much detail of time, place, and circumstances and such particulars as to the person (if any) against whom, and the thing (if any) in respect to which the offense was committed, as are

necessary to identify the transaction, to bring it within the statutory definition of the offense charged, to show that the court has jurisdiction, and to give the accused reasonable notice of the facts.

Averments which so charge the offense and the transaction shall be held to be sufficient.

20. On November 2, 2004, Senate Bill No. 2851, amending article 1, section 10 to allow indictment by written information by a prosecuting officer, was approved by the voters in a general election. *See* 2004 Haw. Sess. L., at 1085.

21. On November 2, 2004, article 1, section 14 was amended by ratification of the electorate in respects immaterial to the present matter. *See* 2004 Haw. Sess. L., at 1084.

that the accused committed a violation of the charged offense both as to the elements of the offense and the concomitant culpable state of mind. *See Ontai*, 84 Hawai'i at 63, 929 P.2d at 76 ("Probable cause is established by 'a state of facts as would lead a person of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused.' ") (quoting *State v. Chung*, 75 Haw. 398, 409–10, 862 P.2d 1063, 1070 (1993)); *State v. Araki*, 82 Hawai'i 474, 482, 923 P.2d 891, 899 (1996) ("Probable cause has been established when it can be said that a reasonable and prudent person viewing the evidence would have a strong suspicion that a crime has been committed."); *Kane*, 3 Haw.App. at 458, 652 P.2d at 648 (holding that the grand jury had sufficient facts to find probable cause that the defendant had committed a violation of HRS § 134–9, relating to firearms possession); *State v. Okumura*, 59 Haw. 549, 550, 584 P.2d 117, 119 (1978) ("A grand jury indictment must be based on probable cause ... [, meaning such facts necessary] to believe and conscientiously entertain a strong suspicion of guilt of the accused.") (Internal citation omitted.). Because "conscientiously entertain[ing] a strong suspicion of guilt of the accused" necessitates establishing a likelihood that (1) all elements of the charged offense are present and (2) the accused possessed the requisite state of mind as to each element of the charged offense, an indictment must, *ipso facto*, aver facts sufficient to permit the grand jury to find probable cause both as to the elements of the charged offense and to the accused's state of mind.

### b. *Jurisdiction and venue*

In addition to alleging the elements of the charged offense, the plain language of HRS § 806–34 requires that an indictment aver facts sufficient to "show that the court has jurisdiction." In turn, HRPP Rule 12(b)(2),

*see supra* note 6, allows motions to dismiss based on jurisdictional defects at any time during the pendency of the proceedings. Indeed, "jurisdiction of the offense charged and of the person of the accused is a fundamental and indispensable prerequisite to a valid prosecution." *Adams v. State*, 103 Hawai'i 214, 221, 81 P.3d 394, 401 (2003) (citing *State v. Meyers*, 72 Haw. 591, 593, 825 P.2d 1062, 1064 (1992) (citations omitted)).

Venue too must be established for an indictment to be sufficient, though, under Hawai'i law, venue rides the coattails of jurisdiction: HRS § 806–16 (1993) states that "[i]t shall not be necessary to state any venue in the body of any indictment, but the jurisdiction named in the margin thereof shall be taken to be the venue for all facts stated in the body of the indictment."

Finally, article I, section 14 of the Hawai'i Constitution requires that,

[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the district wherein the crime shall have been committed, *which district shall have been previously ascertained by law*, or of such other district to which the prosecution may be removed with the consent of the accused....

(Emphasis added.) A plain reading of this language supports the conclusion that proper venue must be ascertained before a prosecution at trial may lawfully proceed.[22]

### c. *Facts must be averred in the indictment pertaining to timeliness of prosecution.*

It is true, as the prosecution urges, that an indictment need not allege facts *solely* related to negating defenses that may be raised by the accused. *State v. Adams*, 64 Haw. 568, 571, 645 P.2d 308, 309 (1982) ("It has long been held that indictments need not

---

**22.** HRS § 806–17 (1993) provides in relevant part that "[t]he judicial circuits of the State established by [HRS § ] 603–1 are deemed to be the "districts" referred to in Article I, section 14, of the Constitution of the State."

Other states have taken the position that venue must be alleged in an indictment. *See, e.g., State v. Webb*, 323 Ark. 80, 913 S.W.2d 259, 262 (1996); *Crouse v. State*, 271 Ga.App. 820, 611

S.E.2d 113, 116 (2005); *Weaver v. State*, 583 N.E.2d 136, 141 (Ind.1991). It is well settled, on the other hand, that federal indictments need not allege venue. *See, e.g., United States v. Branan*, 457 F.2d 1062, 1065 (6th Cir.1972); *Hemphill v. United States*, 392 F.2d 45, 47 (8th Cir.1968); *Carbo v. United States*, 314 F.2d 718, 733 (9th Cir.1963).

anticipate and negate possible defenses; rather, it is left to the defendant to show his defenses at trial."). It is equally true that the statute of limitations is a waivable affirmative defense. *See Adams v. State*, 103 Hawai'i at 226, 81 P.3d at 406 (citing *Acevedo–Ramos v. United States*, 961 F.2d 305, 307–09 (1st. Cir.1992) (concluding that statute of limitations is a waivable affirmative defense)); *Timoteo*, 87 Hawai'i at 115–16, 952 P.2d at 872–73 (holding "that [the defendant] waived the statute of limitations for the time-barred lesser included offense of simple trespass by requesting that the trial court instruct the jury on it").

▮ Nevertheless, while statutes of limitation may be invoked, and waived, as affirmative defenses, that is not the sum total of their nature or function. As set forth in HRS § 701–114(1)(e), the timeliness of the prosecution in satisfaction of HRS § 701–108 constitutes a baseline substantive component that the prosecution must prove beyond a reasonable doubt at trial; silence by the defendant on the issue of timeliness does not relieve the prosecution of its burden of proving that component. Rather, facts establishing timeliness, like facts establishing jurisdiction, must be averred in order to fulfill due process notice requirements.[23] This court's holding in *Kaakimaka* implicitly established this proposition.

In *Kaakimaka,* the defendant was charged, *inter alia,* with conspiracy to commit second degree murder, in violation of HRS § 705–520 (1993),[24] three years and eleven months after the victim's murder. Pursuant to HRS § 701–108(2)(c), *see supra* note 3, prosecution for conspiracy to commit second degree murder, as an unclassified felony, had a statutory limit of three years. Therefore, in an effort to preserve the conspiracy charge in the face of the three-year limit, the prosecution alleged that the conspiracy included an underlying felony of concealment of murder which ran continuously past the date of the murder such that the statute of limitations had not expired by the time of the indictment.

This court held that because "concealment" was not an identifiable underlying felony offense set forth in the HPC, as required by HRS § 705–520, *see supra* note 24, the indictment was insufficient. 84 Hawai'i at 293, 933 P.2d at 630. This court demanded specificity as to which particular felony underlay the conspiracy charge because of the correlative nature of punishment for a conspiracy conviction, where "the grade and class of the conspiracy is contingent upon the grade and class of the most serious underlying offense that is an object of the conspiracy." 84 Hawai'i at 295, 933 P.2d at 632 (citing HRS § 705–526 (1993)).[25] Thus, we ruled that fail-

**23.** The circuit court reached a similar conclusion in its COL No. 10, *supra* part C, relying in part on *Powers*, 718 So.2d 255, and *Moss*, 220 Ga. App. 150, 469 S.E.2d 325. *Powers* and *Moss* reflect a long tradition in Florida and Georgia, respectively, of requiring the State to allege statute of limitation exceptions in the indictment if the exception will be relied upon at trial. *Powers*, 718 So.2d at 256 ("An information must show on its face that the prosecution has begun within the statute of limitations or must allege facts to show that the statute was tolled."); *Moss*, 469 S.E.2d at 326 ("It has long been the law in Georgia 'in a criminal case, where an exception is relied upon to prevent the bar of the statute of limitations, it must be alleged and proved.' ") (quoting *Hollingsworth v. State*, 7 Ga.App. 16, 65 S.E. 1077, 1077 (1909)).

**24.** HRS § 705–520 provides:

A person is guilty of criminal conspiracy if, with intent to promote or facilitate *the commission of a crime:*

(1) He agrees with one or more persons that they or one or more of them will engage in

or solicit the conduct or will cause or solicit the result specified by the definition of the offense; and

(2) He or another person with whom he conspired commits an overt act in pursuance of the conspiracy.

(Emphasis added.)

**25.** HRS § 705–526 provided:

(1) A conspiracy to commit a class A felony is a class B felony.

(2) Except as provided in [paragraph] (1), conspiracy to commit a crime is an offense of the same class and grade as the most serious offense which is an object of the conspiracy. Effective June 16, 1997, the legislature amended HRS § 705–526 to make conspiracy to commit murder in any degree a class A felony. *See* 1997 Haw. Sess. L. Act 149, §§ 3 and 9 at 290–91. Nevertheless, the amendment does not affect the central holding of *Kaakimaka;* failure to allege facts in an indictment invoking exceptions to the statute of limitations relied upon by the prosecution renders the indictment insufficient on due process grounds.

ure to aver an identifiable underlying offense "deprives the defendant of notice of the class and grade of conspiracy and, therefore, deprives him or her of notice of the possible punishment and the statute of limitations. Such failure to notify a defendant of the charges he or she must prepare to meet deprives him or her of due process." *Id.*

Our decision in *Kaakimaka* supports the proposition that an indictment is insufficient if: (1) on its face, it is untimely; and (2) it fails to allege facts that invoke an exception to the standard statute of limitations set forth in HRS § 701–108(2) so that "[the accused] may adequately prepare his [or her] defense," *Vanstory*, 91 Hawai'i at 44, 979 P.2d at 1070, as required by due process. That is because facts necessary adequately to prepare a defense include those that put the accused on notice as to any exception to the applicable statute of limitations upon which the prosecution is relying.

We therefore hold that, on the facts before us, when the charged offense is theft by deception, as defined by HRS § 708–830(2), and the prosecution is relying on the tolling provision of HRS § 701–108(3)(a), relating to "[a]ny offense an element of which is … fraud," the prosecution must not only allege the timely date or dates of commission of the offense in the indictment, but also the earliest date of the "discovery of the offense by an aggrieved party or … a person who has a legal duty to represent [the] aggrieved party." Inasmuch as the indictment in the present matter failed to aver facts pertaining to the date of discovery of the aggrieved party, DAGS, the circuit court correctly determined that it was insufficient.[26]

3. *The circuit court correctly concluded that the prosecution's offer of proof failed to cure the indictment.*

■■■ An insufficient indictment can be cured. This court stated in *Treat* that,

in determining whether the accused's right to be informed of the nature and cause of the accusation against him has been violated, we must look to all of the information supplied to him by the State to the point where the court passes upon the contention that his right has been violated.

67 Haw. at 120, 680 P.2d at 251 (quoting *Robins*, 66 Haw. at 317, 660 P.2d at 42–43); *see also State v. Elliott*, 77 Hawai'i 309, 312, 884 P.2d 372, 375 (1994) ("One way in which an otherwise deficient count can be reasonably construed to charge a crime is by examination of the charge as a whole."); *State v. Abellira*, 67 Haw. 105, 106, 678 P.2d 1087, 1088 (1984) (holding that grand jury transcripts supplied to defendants served to fully apprise them of the nature of the charges). In weighing the curative effect of the supplemental information provided to the accused we consider only the facts of which the accused is placed on actual knowledge. *Israel*, 78 Hawai'i at 70–73, 890 P.2d at 307–10 (citing *State v. Tuua*, 3 Haw.App. 287, 292, 649 P.2d 1180, 1184 (1982)).

Under the tests enunciated in *Treat* and *Israel*, the Appellees had actual knowledge of the prosecution's reliance on the fraud exception. On June 19, 2002, Stan's Contracting filed its motion to dismiss on the grounds that the statute of limitations had run and that the fraud exception under HRS § 701–108(3)(a), *see supra* note 3, did not apply to theft by deception. On July 24, 2002, Murphy Construction joined that motion. In the motion, the Appellees acknowledged that the prosecution was relying on HRS § 701–108(3)(a) for its authority to prosecute these charges.

The indictment, however, is devoid of any facts averring when the alleged involvement of the Appellees in Eviota's scheme was first discovered and, therefore, provides no facts that, if proven at trial, would establish that the extended limitation period had not expired. The prosecution, at the July 26, 2002

26. The indictment alleged sufficient facts to put the Appellees on notice as to *which* statute of limitations exception the prosecution was relying upon. Pursuant to our holding in part III.A.6, *supra*, that theft by deception is an "offense an element of which is … fraud," alleging theft by deception invoked the fraud exception of HRS

§ 701–108(3)(a) and served to put the Appellees on notice that, because on its face the indictment was untimely, the prosecution was relying on the fraud exception to preserve timeliness. The Appellees expressly recognized that reliance in their motion to dismiss. *See* discussion *infra* in part III.B.3.

hearing, attempted to cure this deficiency through an offer of proof that Ho first "determined there was some criminal liability on the part of [the Appellees]" on February 14, 2000. Under HRS § 701–108(3)(a), the period to indict would run until February 14, 2003, and the State's prosecution would therefore be timely inasmuch as it began on May 15, 2002.

However, under HRS § 701–108(3)(a), the extension begins to run when *either* the "aggrieved party" *or* the "person who has a legal duty to represent [the] aggrieved party" discovers the scheme. The prosecution's offer of proof established, at most, when Ho, as an agent of the Department of the Attorney General, "discover[ed] ... the offense," not when the aggrieved party itself, DAGS, learned of the scheme. Therefore, to cure the indictment, an affirmative offer of proof was required that no representative of DAGS had discovered the alleged involvement of the Appellees prior to May 15, 1999. Absent such facts, the indictment did not sufficiently allege that the prosecution was timely.

Therefore, the circuit court correctly concluded that the prosecution's offer of proof failed to cure the insufficient indictment.

## IV. *CONCLUSION*

Accordingly, we affirm the August 9, 2002 order of the circuit court granting the Appellees' motion to dismiss the indictment with prejudice.

