**Electronically Filed
Supreme Court
SCWC-22-0000690
28-AUG-2025
07:55 AM
Dkt. 9 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

STATE OF HAWAI'I, Petitioner/Plaintiff-Appellee,

vs.

KOA KAAKIMAKA, Respondent/Defendant-Appellant.
_____

SCWC-22-0000690

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-22-0000690; CR. NO. 3CPC-21-0000224)

AUGUST 28, 2025

RECKTENWALD, C.J., McKENNA, EDDINS, GINOZA, AND DEVENS, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I.    Introduction

Koa Kaakimaka ("Kaakimaka") placed his iPhone on the outside ledge of a bathroom window of a house to record a 15-year-old girl showering inside.  The State of Hawai'i ("State") charged Kaakimaka with invasion of privacy in the first degree.  Before trial, Kaakimaka filed a motion to dismiss the charge,

asserting the charge was insufficient.  The circuit court denied the motion.  A jury found Kaakimaka guilty as charged.

Kaakimaka appealed, asserting the circuit court erred by denying his motion to dismiss.  In a summary disposition order ("SDO"), a plurality of the Intermediate Court of Appeals ("ICA") deemed the charge deficient.  The ICA ordered that the circuit court dismiss the indictment without prejudice.

We accepted the State's application for certiorari, which asks whether the ICA gravely erred by dismissing the charge on the grounds it was deficient.

Applying standards for determining the sufficiency of a criminal charge, we hold that (1) although "in any private place" is an attendant circumstances element of the charged offense, the statutory definition of "private place" does not create an additional attendant circumstance element; (2) "private place" is not a generic term requiring further particulars; and (3) based on other information provided up to the time of his motion to dismiss, Kaakimaka was informed of the nature and cause of the accusation against him and had actual knowledge of what was alleged to be the "private place."

We therefore vacate the ICA's April 3, 2025 judgment on appeal and remand the appeal back to the ICA to address Kaakimaka's remaining points of error.[1]

## II.  Background

## A.  Circuit court proceedings

### 1.  Indictment

On March 8, 2021, a grand jury returned an indictment charging Kaakimaka with one count of violation of privacy in the first degree, in violation of Hawai'i Revised Statutes ("HRS") § 711-1110.9(1)(a) (2014).[2]  The indictment stated:

> On or about the 12th day of June, 2018, in North Kohala, in the County and State of Hawai'i, KOA KAAKIMAKA, other than in the execution of a public duty or as authorized by law, intentionally or knowingly installed or used, or both, in any private place, without the consent of the person or persons entitled to privacy therein, any device for observing, recording, amplifying, and/or broadcasting

---

[1]  Kaakimaka raised five other points of error: (1) the trial court erred in refusing to give Kaakimaka's request[ed] jury instruction re: "definition – installed or used a device in a private place," (2) the trial court erred in refusing to give Kaakimaka's requested jury instruction re: "definition – 'private place,'" (3) the trial court erred in failing to give Kaakimaka's requested lesser included jury instructions, (4) the State failed to present sufficient evidence to prove beyond a reasonable doubt that Kaakimaka installed or used a device in a private place, and (5) the trial court erred in denying Kaakimaka's motion to suppress due to the trial court's giving less weight to Kaakimaka's testimony due to his generic interest in the outcome of the case.  As the ICA dismissed the charge, it did not address these additional points of error and they are therefore not raised on certiorari.

[2]  HRS § 711-1110.9(1)(a) states:

> A person commits the offense of violation of privacy in the first degree if, except in the execution of a public duty or as authorized by law: . . . [t]he person intentionally or knowingly installs or uses, or both, in any private place, without consent of the person or persons entitled to privacy therein, any device for observing, recording, amplifying, or broadcasting another person in a stage of undress or sexual activity in that place[.]

3

>another person in a stage of undress or sexual activity in that place, thereby committing the offense of Violation of Privacy in the First Degree, in violation of Section 711-1110.9(a), Hawai'i Revised Statutes, as amended[.]

(Emphasis added.)

HRS § 711-1100 (2014) defines "private place" as "a place where one may reasonably expect to be safe from casual or hostile intrusion or surveillance, but does not include a place to which the public or a substantial group thereof has access."

2. **Kaakimaka's motions to dismiss the indictment and to suppress evidence**

On November 15, 2021, Kaakimaka filed a motion to dismiss the indictment. Kaakimaka asserted the indictment was deficient because it failed to include the statutory definition of "private place," which he alleged does not comport with its commonly understood meaning. Kaakimaka listed various dictionary definitions of "private."[3] He then asserted "private place" could mean a number of different things:

---

[3]    Kaakimaka listed the following:

> **Full Definition of *private***
> **(Entry 1 of 2)**
> **1a**: intended for or restricted to the use of a particular person, group, or class
> a *private* park
> **b**: belonging to or concerning an individual person, company, or interest
> a *private* house
> **c(1)**: carried on by the individual independently of the usual institutions a doctor in *private* practice *also*: being educated by independent study or a tutor
> or in a private school *private* students
> **(2)**: restricted to the individual or arising independently of others *private* opinion
> **d**: not general in effect a *private* statute

> First, "private place" could mean a secret place, as "private" can mean "secret."
> Second, "private place" could also mean not a public/government/institution place.
> Third, "private place" could mean belonging to an individual.
> Fourth, "private place" could mean a person's private (sexual) parts.
> Fifth, "private place" could mean a private patient room.
> Sixth, "private place" could be a secret place.
> Seventh, a "private place" could be the location where enlisted persons of the lowest rank in the marine corps gather.

On the same day, Kaakimaka also filed a motion to suppress evidence. Kaakimaka attached as exhibits two police reports

---

**e(1):** accommodating only one patient The *private* patient room, once a luxury for the privileged few, is about to become the standard for the nation's hospitals, as evidence mounts that shared rooms lead to higher infection rates, more medical errors, privacy violations and harmful stress.— Laura Landro
**(2):** staying or recovering in a room accommodating only one patient *private* hospital patients— compare SEMIPRIVATE SENSE 2
**2a(1):** not related to one's official position : PERSONAL *private* correspondence
**(2):** not holding public office or employment a *private* citizen
**b:** being a private
**3a:** not known or intended to be known publicly: SECRET
**b:** preferring to keep personal affairs to oneself: valuing privacy highly
**c:** withdrawn from company or observation a *private* retreat
**d:** unsuitable for public use or display
**4:** not having shares that can be freely traded on the open market
a *private* company

**private**
**noun**
**Definition of *private* (Entry 2 of 2)**
**1a:** an enlisted person of the lowest rank in the marine corps or of one of the two lowest ranks in the army
**b:** a person of low rank in any of various organizations (such as a police or fire department)
**2privates** *plural* : PRIVATE PARTS
**3** *archaic* : one not in public office
**4** *obsolete* : PRIVACY

https://www.merriam-webster.com/dictionary/private.

from the date of his arrest. One of the reports contained details regarding the charge against Kaakimaka. In summary, the alleged victim saw the camera of a silver or white iPhone 5 facing into the bathroom window. The report also outlined the conversation Kaakimaka had with Hawai'i County Police Officer Landon Takenishi ("Officer Takenishi") after waiving his Miranda rights, in which he confessed to taking a "video [of] the girl in the bathroom."

In its memorandum in opposition, the State argued that "private place" is not a generic term, but is instead "readily comprehensible to a person of common understanding." The State also maintained that even if "private place" is a generic term, the court should consider all of the information available to Kaakimaka to determine if he had sufficient notice of the charge. The State further argued that Kaakimaka was aware of the nature and cause of the accusation against him because he admitted to attempting to video a young girl in the bathroom.

After a hearing, the circuit court denied Kaakimaka's motion to dismiss.

### 3. Trial, verdict, sentencing, and Kaakimaka's notice of appeal

Evidence at trial indicated Kaakimaka videorecorded a young girl taking a shower by placing a phone camera in a high-up bathroom window that one cannot see through while standing on

6

the ground. The recording of Kaakimaka admitting to "videotaping" through the bathroom window was also received in evidence. In closing argument, Kaakimaka's counsel conceded that there was no dispute that Kaakimaka used the phone to record at the bathroom window, but argued that the statutory requirement of "in a private place" was not met because Kaakimaka "never went in the bathroom."

On August 25, 2022, the jury found Kaakimaka guilty of the offense of violation of privacy in the first degree. On October 17, 2022, he was sentenced to four years of probation with conditions. On November 14, 2022, Kaakimaka timely filed a notice of appeal to the ICA.

**B. ICA proceedings**

**1. Kaakimaka's opening brief**

On appeal, Kaakimaka asserted the trial court erred by denying his motion to dismiss because the charging language was deficient, reasserting arguments he had raised below.[4] Kaakimaka also maintained that because he timely objected to the sufficiency of the charge, he was not required to demonstrate prejudice from the insufficient charge. Kaakimaka further argued that, even under the Motta/Wells liberal construction

---

[4]    See supra note 1 for Kaakimaka's other points of error on appeal.

standard,[5] the charge did not meet minimum due process standards because it did not describe the "private place."

### 2. The State's answering brief

The State countered that the examples of "private place" given by Kaakimaka were inapposite. The State argued "private place" is not a generic term that has "species of locations" that need to be defined. The State maintained that even if "private place" is determined to be generic, the ICA should look to all of the information provided to Kaakimaka up to the time he filed his motion. The State pointed to evidence produced in discovery that gave Kaakimaka notice that the "private place" was the bathroom.

The State also asserted Kaakimaka had actual notice of the nature and cause of the accusation, because after being given his Miranda warnings, he admitted to trying to video a young girl in a bathroom. The State cited to State v. Garcia, 152 Hawai'i 3, 518 P.3d 1153 (2022), to argue that the statutory definition of "private place" was not required to be included in the indictment:

> Charging documents are often rife with superfluous and unwieldy statutory language. When it comes to informing defendants of the accusations they face, this legalese

---

[5]    The Motta/Wells liberal construction rule applies when the sufficiency of a charge is challenged for the first time on appeal. It requires the court to vacate a conviction only if (1) the charge could not within reason be construed to allege a crime; or (2) the defendant was prejudiced. State v. Kauhane, 145 Hawai'i 362, 366-67, 452 P.3d 359, 369-70 (2019). Because Kaakimaka challenged the sufficiency of the charge in a timely manner, this standard does not apply.

8

> (though sometimes unavoidable) is no substitute for meaningful factual information about the charged violation. Details about the who, what, where, when, and how of the alleged offense help ensure defendants are properly informed of the charge they must defend against, and this court endorses these facts' inclusion in charging documents.

Garcia, 152 Hawai'i at 8, 518 P.3d at 1158.

### 3. Kaakimaka's reply brief

In reply, Kaakimaka argued that because the statutory definition of "private place" does not comport with its commonly understood definition, it is not readily comprehensible to persons of common understanding. Kaakimaka posited that actual notice is only relevant under the Motta/Wells standard and is not applicable here.

### 4. The ICA's summary disposition order

On January 31, 2025, the ICA issued its SDO, with a plurality of the court agreeing with Kaakimaka that the charge was deficient. State v. Kaakimaka, No. CAAP-22-0000690, 2025 WL 355165, at *2 (Haw. App. Jan. 31, 2025). The ICA ordered that Kaakimaka's judgment of conviction and sentence be vacated, and the case remanded to the circuit court with instructions to dismiss the indictment without prejudice. Kaakimaka, 2025 WL 355165, at *3.

In the lead opinion, Judge Wadsworth opined that because the phrase "private place" is susceptible to multiple common meanings and can encompass more and/or different places than the

9

statutory definition, the indictment failed to apprise Kaakimaka of what he was required to defend against. Kaakimaka, 2025 WL 355165, at *2. Judge Wadsworth concluded that the State failed to state an offense and the conviction could not be sustained. Kaakimaka, 2025 WL 355165, at *3. This lead opinion ordered that the case be remanded with instructions to dismiss the indictment without prejudice. Kaakimaka, 2025 WL 355165, at *4.

Judge Hiraoka concurred with Judge Wadsworth regarding the deficiency of the charge. Kaakimaka, 2025 WL 355165, at *4-5 (Hiraoka, J., concurring in part and dissenting in part). Judge Hiraoka dissented because he did not believe Kaakimaka's conviction was supported by substantial evidence. Kaakimaka, 2025 WL 355165, at *4 (Hiraoka, J., concurring in part and dissenting in part). Judge Hiraoka opined that the evidence did not show that Kaakimaka was "in" a private place recording a person in a stage of undress. Kaakimaka, 2025 WL 355165, at *5 (Hiraoka, J., concurring in part and dissenting in part). Therefore, Judge Hiraoka would have dismissed the charge with prejudice. Id.

Judge Guidry dissented in part on the sufficiency of the charge issue. Kaakimaka, 2025 WL 355165, at *5-6 (Guidry, J., concurring in part and dissenting in part). Judge Guidry opined that the indictment's reference to a "private place" as a place where "the person or persons [were] entitled to privacy therein"

10

provided sufficient notice of the charge.  Kaakimaka, 2025 WL 355165, at *6 (Guidry, J., concurring in part and dissenting in part).  Further, Judge Guidry pointed out that Kaakimaka knew he was being charged with using his phone to make a recording through a bathroom window.  Id.  She reasoned that courts can consider other information provided to a defendant, besides the charge.  Id.  Judge Guidry would not have vacated the judgment and would have addressed the remaining points of error.  Id.

As a plurality of the ICA determined the charge to be deficient, it did not decide Kaakimaka's other points of error on appeal.  The ICA ordered that Kaakimaka's conviction be vacated and the case remanded with instructions to dismiss the charge without prejudice.  Kaakimaka, 2025 WL 355165, at *4.

C.  **Certiorari proceedings**

1.  **State's application for writ of certiorari**

In its application for writ of certiorari, the State argues the ICA's analysis was defective because "private place" does not create an additional element of the offense and is a phrase that is commonly understood.  Further, the State contends the ICA ignored the actual notice Kaakimaka had of what he was to defend against at trial.

The State maintains the charge should have been read as a whole.  It also asserts the ICA overlooked this court's more

recent precedent on charging sufficiency.[6]  The State further contends the ICA erred by considering separate definitions of "private" and "place," instead of what the phrase commonly means.  The State points out that the ICA never found that "private place" added an element to the charge, only that it "might have a broader common meaning [than] its statutory definition."

Next, the State asserts that the ICA erred by ignoring the totality of the charging language.  The State argues that the private place in which a person might be in a state of undress or engaged in sexual activity is not so broad as to reach locations outside the statutory definition.  Further, the State contends that under a common sense approach of reading the charging language together, the charge was sufficient to give notice.

The State also argues the ICA should have considered all of the information provided to Kaakimaka by the time he filed his motion, including the police reports and his own interview with the police.  The State posits Kaakimaka had actual notice because, on the day he filed his motion, he identified the

---

[6]     The State specifically cites to State v. Aquino, 154 Hawai'i 388, 550 P.3d 1246 (2024); Garcia, 152 Hawai'i 3, 518 P.3d 1153; and State v. Van Blyenburg, 152 Hawai'i 66, 520 P.3d 264 (2022).  These cases are discussed below.

bathroom as the "private place" in his separate motion to suppress.

The State asks that we reject the ICA's conclusion and reinstate Kaakimaka's conviction.

### 2. Kaakimaka's response

Kaakimaka counter-argues that the ICA was correct in its reasoning that "private" and "place" "could encompass more and different places." Kaakimaka again provides several examples of dictionary definitions of "private place," including: "1. [B]elonging to some particular person: private property . . . 8. [N]ot open or accessible to the general public: a private beach . . . 10. [W]ithout the presence of others; alone. 11. [S]olitary; secluded. . . ." Kaakimaka maintains that because there are multiple possible definitions, the ICA was correct in ruling that "private place" should have been defined.

Kaakimaka further argues he did not have notice of the offense because the police report did not specify what the "private place" was or where its boundaries were. Kaakimaka again argues that his charge is not to be evaluated under the Motta/Wells liberal construction standard as he challenged the charge early on.

### III. Standard of Review: Sufficiency of a Charge

"Whether a charge sets forth all the essential elements of a charged offense is a question of law, which we review under the de novo, or right/wrong, standard."  State v. Baker, 146 Hawaiʻi 299, 305, 463 P.3d 956, 962 (2020).

### IV.  Discussion

### A.    Standards for determining sufficiency

Article I, Section 5 of the Hawaiʻi Constitution provides that "[n]o person shall be deprived of life, liberty, or property without due process of law[.]"  Article I, Section 14 provides that in criminal proceedings, "the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation[.]"

> Notice plays the central role in our analyses of charging documents' adequacy. The Fifth Amendment's Due Process Clause and article I, section 5 of the Hawaiʻi Constitution protect defendants' right to be aware of both the charges they face and the nature of the proof necessary to sustain those charges. The Sixth Amendment and article I, section 14 of the Hawaiʻi Constitution likewise require that defendants "be informed of the nature and cause" of the accusations they face.

Van Blyenburg, 152 Hawaiʻi at 74, 520 P.3d at 272.  But "[t]he purpose of these notice requirements is not to facilitate obtuse technical arguments about what is and what is not an element of a crime, or about what complex statutory definitions should or should not be included in a charging document."  Id.  Rather,

the purpose is "to safeguard an accused's fundamental right to know what they must defend against to avoid conviction." Id.[7]

Thus, when a criminal defendant timely challenges the sufficiency of a charge, as here, an appellate court will uphold the charge if: (1) it contains the elements of the offense; and (2) it sufficiently apprises the defendant of what the defendant must be prepared to meet. Kauhane, 145 Hawai'i at 369–70, 452 P.3d at 366–67. "In other words, the relevant inquiry is whether or not the charge has provided the accused with fair notice of the offense's essential elements." 145 Hawai'i at 370, 452 P.3d at 367 (cleaned up).

In general, the elements of an offense, which must be alleged and proved by the State, are (1) conduct, (2) attendant circumstances, and (3) results of conduct. See HRS § 702-205 (2014); see also Baker, 146 Hawai'i at 306, 463 P.3d at 963.

In some cases, a charge drawn in the language of the statute is sufficient because the statute itself "fully defines the offense in unmistakable terms readily comprehensible to

---

[7] In Van Blyenburg, the defendant was charged with leaving the scene of an accident involving death or serious bodily injury and negligent homicide. 152 Hawai'i at 69, 520 P.3d at 267. The defendant argued that the charge against him was defective because it did not allege that he failed to stop at the scene of the collision or as close thereto as possible "without obstructing traffic more than is necessary." Id. We held that even though that phrase was an attendant circumstance, and therefore an element, and was missing from the indictment, it was irrelevant to the theory of the case because the defendant did not stop the car at all. 152 Hawai'i at 69-70, 71, 520 P.3d at 267-68, 269.

persons of common understanding." Kauhane, 145 Hawai'i at 370, 452 P.3d at 367 (cleaned up). But some statutes "fail to sufficiently describe the crime and a charge couched merely in the language of such a statute would violate due process." Id.

But, generally, "if a charging document tracks an offense's statutory language, then the State [does not] need to load it with definitions of words defined elsewhere." Garcia, 152 Hawai'i at 8, 518 P.3d at 1158. The court can also look to all of the other information in the charge to determine if fair notice of any one element was given to the defendant. State v. Wheeler, 121 Hawai'i 383, 395, 219 P.3d 1170, 1182 (2009). Further, the State needs to provide the statutory definition of a term only when it creates an additional essential element of the offense, and the term itself does not provide a person of common understanding with fair notice of that element. See Wheeler, 121 Hawai'i at 393, 394, 219 P.3d at 1180, 1181.

Thus, only when the statutory definition of one of the elements of an offense creates an additional element, then must that definition be alleged in the charge. In Wheeler, the charge was that the defendant "did operate or assume physical control of a motor vehicle[.]" 121 Hawai'i at 386, 219 P.3d at 1173. The charge did not include the statutory definition of the word "operate," which included that it must be "upon a public way, street, road, or highway." 121 Hawai'i at 391, 219

16

P.3d at 1178. We held that this definition created an additional attendant circumstance, an element of the offense that needed to be alleged in the charge. 121 Hawai'i at 392, 219 P.3d at 1179. Not only did "operate" create an additional attendant circumstance, but the common understanding of the word "[did] not geographically limit where the conduct must take place." 121 Hawai'i at 394, 219 P.3d at 1181. We held that "operate" was therefore neither unmistakable nor readily comprehensible to persons of common understanding. Id.

Kauhane is another example of when a statutory definition creates an additional element of an offense that must be alleged and defined in a charge. 145 Hawai'i 362, 452 P.3d 359. In that case, the defendant was charged with the offense of "obstructing," for "knowingly or recklessly persist[ing] to obstruct any highway or public passage. . . ." 145 Hawai'i at 365, 452 P.3d at 362. The charge did not provide the statutory definition of "obstruct," which is to "render[] impassable without unreasonable inconvenience or hazard." Id. We held the charge deficient because the statutory definition of "obstructs" created a "result of conduct" element of the offense, which needed to be alleged in the charge. 145 Hawai'i at 371, 452 P.3d at 368. We also held the statutory definition of "obstruct" did not comport with its common definition because the statutory

definition focused on an "unreasonable" obstruction, while the common definition focused on "any" obstruction.  Id.

Some statutory terms do not create additional elements.  In Aquino, 154 Hawai'i 388, 550 P.3d 1246, a defendant's unlawful imprisonment in the first degree charge read that the defendant "knowingly restrained another person[.]"  154 Hawai'i at 390, 550 P.3d at 1248.  The defendant argued that the word "restrain" in his indictment rendered the charge deficient because the statutory definition of "restrain" had two possible definitions, essentially creating attendant circumstances.[8] 154 Hawai'i at 393, 550 P.3d at 1251.  Therefore, the relevant definition of restraint had to be alleged.  Id.  We held that although the statutory definition of "restrain" defined and limited the scope of the element, the definition itself did not create additional elements and did not need to be included in the charging document.  154 Hawai'i at 395, 550 P.3d at 1253.

But generic terms must be defined in a charge.  When a generic term is used, the State must "state the species . . . and descend to particulars."  State v. Jardine, 151 Hawai'i 96, 100, 508 P.3d 1182, 1186 (2022) (citing State v. Israel, 78

---

[8]    "HRS § 707-700 defines restrain two separate ways: 'Restrain' means to restrict a person's movement in such a manner as to interfere substantially with the person's liberty: (1) By means of force, threat, or deception; or (2) If the person is under the age of eighteen or incompetent, without the consent of the relative, person, or institution having lawful custody of the person."  Aquino, 154 Hawai'i at 393, 550 P.3d at 1251.

Hawai'i 66, 73, 890 P.2d 303, 310 (1995)). A term is considered "generic" if it "relates to or is characteristic of a whole group or class." 151 Hawai'i at 100, 508 P.3d at 1186 (citing Webster's Seventh New Collegiate Dictionary, 348 (1965) (cleaned up)).

For example, in Jardine, we held that "substantial bodily injury," as alleged in the charging document, was a generic term that needed to be accompanied by the statutory definition. 151 Hawai'i at 98, 508 P.3d at 1184. "Substantial bodily injury" covered five classes of injuries,[9] so the State needed to allege the class of substantial bodily injury in the charging document. 151 Hawai'i at 100-01, 508 P.3d at 1186-87. Similarly in Israel, the defendant was charged with using a firearm "in the commission of a felony." 78 Hawai'i at 68, 890 P.2d at 305. We held that "felony" is a generic term and that the underlying felony (in Israel's case, terroristic threatening in the first degree) needed to be specifically alleged in order for the defendant to have proper notice. 78 Hawai'i at 70, 890 P.2d at 307.

---

[9] Per HRS § 707-700 (2014), "substantial bodily injury" includes: (1) A major avulsion, laceration, or penetration of the skin; (2) A burn of at least second degree severity; (3) A bone fracture; (4) A serious concussion; or (5) A tearing, rupture, or corrosive damage to the esophagus, viscera, or other internal organs. Jardine, 151 Hawai'i at 100-01, 508 P.3d at 1186-87.

19

As noted, elements must be included in a charge, and we also consider whether a charge sufficiently apprises a defendant of what the defendant must be prepared to meet. Kauhane, 145 Hawai'i at 369-70, 452 P.3d at 366-67; Israel, 78 Hawai'i at 70, 890 P.2d at 307. For the second factor, a defendant has an Article I, Section 14 right to be informed of the nature and cause of the accusation, and courts are not confined to an examination of the charge. Israel, 78 Hawai'i at 70, 890 P.2d at 307. A court can consider "other information in addition to the charge that may have been provided to the defendant during the course of the case up until the time [the] defendant objected to the sufficiency of the charges against him." Wheeler, 121 Hawai'i at 396, 219 P.3d at 1183.

In Wheeler, we noted that at the time of the defendant's timely pre-trial objection to the charge, the record did not establish he knew he was being charged with an offense that had occurred on "public" property. Id. Similarly in Israel, the defendant timely filed a motion to dismiss a charge that did not specify the requisite underlying felony. 78 Hawai'i at 69, 890 P.2d at 306. The record did not sufficiently demonstrate that he was actually aware of the underlying felony. 78 Hawai'i at 71, 890 P.2d at 308.

Thus, as long as elements are alleged in a charge, all other information provided to a defendant before the motion to

dismiss can be considered to assess if the defendant was informed of the nature and cause of the accusation.  State v. Robins, 66 Haw. 312, 316, 660 P.2d 39, 42-43 (1983); Israel, 78 Hawai'i at 70, 890 P.2d at 307.  Courts can also look to other information in the record to determine actual knowledge, even when the sufficiency of a charge is timely challenged.

Applying these standards, as discussed below, we hold that the charge was sufficient.

**B.    The statutory definition of "private place" does not create an additional attendant circumstance element**

The State is required to provide the statutory definition of a term when it creates an additional essential element of the offense, and the term itself does not provide a person of common understanding with fair notice of that element.  See Wheeler, 121 Hawai'i at 393, 394, 219 P.3d at 1180, 1181.

"Private place" is itself an attendant circumstance element of HRS § 711-1110.9(1)(a).  The statutory definition of a "private place" is "a place where one may reasonably expect to be safe from casual or hostile intrusion or surveillance, but does not include a place to which the public or a substantial group thereof has access."  HRS § 711-1100.  In relevant part, the indictment said that Kaakimaka "installed or used, or both, in any private place, without the consent of the person . . . entitled to privacy therein, any device for . . . recording . .

. another person in a stage of undress . . . in that place . . . ."

We hold that the term "private place" in the indictment does provide a person of common understanding with fair notice of the attendant circumstance consistent with the statutory definition of "private place." The statutory definition does not create an additional attendant circumstance element. We also agree with Judge Guidry that the reference in the indictment to a "private place" as a place where a person is "entitled to privacy therein" provides fair notice. The term's common definition corresponds with its statutory definition.

Even the common definitions provided by Kaakimaka, "belonging to some particular person: private property[,]" "not open or accessible to the general public[,]" and "without the presence of others," coincide with the statutory definition. The meaning of "private place" was therefore unmistakable and readily comprehensible to persons of common understanding. Hence, the charge drawn in the language of the statute defining the offense was sufficient, even if it did not contain the definition of the term "private place."

## C. "Private place" is not a generic term

As noted, generic terms must be defined in a charge and when a generic term is used, the State must state the species and descend to particulars. Jardine, 151 Hawai'i at 100, 508

P.3d at 1186; see also, United States v. Cruikshank, 92 U.S 542, 558 (1875) ("It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, 'includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species,-- it must descend to particulars.")

But a term is "generic" only if it "relates to or is characteristic of a whole group or class." Jardine, 151 Hawai' at 100, 508 P.3d at 1186 (cleaned up). "Private place" is not a generic term like "substantial bodily injury" or "felony," which have statutory particulars. The statutory definition is simply one that comports with the common understanding of the term. Thus, in contrast with Jardine and Israel, the statutory definition of "private place" does not contain any "class" of locations that needs to be specified.

**D. Based on other information provided up to the time of his motion to dismiss, Kaakimaka had actual knowledge of what was alleged to be the "private place"**

The purpose of notice requirements is not to facilitate obtuse technical arguments about elements of a crime, or about what statutory definitions should be included in a charging document-- it is, rather, to safeguard an accused's fundamental right to know what they must defend against to avoid conviction. Van Blyenburg, 152 Hawai'i at 74, 520 P.3d at 272. In

23

determining whether a defendant's constitutional right to fair notice of essential elements has been violated, Kauhane, 145 Hawai'i at 369-70, 452 P.3d 366-67, courts are not confined to an examination of the charge, Israel, 78 Hawai'i at 70, 890 P.2d at 307, but can consider other information provided to the defendant until they objected to sufficiency. Wheeler, 121 Hawai'i at 396, 219 P.3d at 1183.

Our cases provide examples of information in the record that can demonstrate a defendant's actual knowledge. In Israel, we considered factual information presented at a preliminary hearing to determine if the defendant had actual notice. 78 Hawai'i at 71, 890 P.2d at 308. We said that information "obtained via discovery should be considered." 78 Hawai'i at 72, 890 P.2d at 309. In Wheeler, we looked to the entire record up until the objection to see if the defendant had been properly informed of the nature and cause of the accusation. 121 Hawai'i at 396, 219 P.3d at 1183. In Robins, we said that because the defendant obtained grand jury transcripts "early in the proceedings," that was sufficient to find, along with the indictment, that the defendant was fully informed of the charges against him. 66 Haw. at 316, 660 P.2d at 42-43; see also State v. Treat, 67 Haw. 119, 120, 680 P.2d 250, 251 (1984) (holding that the defendant's access to grand jury transcripts was sufficient to provide notice, even if the details of the crime

were not fully alleged in the indictment); State v. Abellira, 67 Haw. 105, 105-06, 678 P.2d 1087, 1088 (1984) (holding that even though the indictment did not specify the underlying felony the defendant allegedly committed, the defendant's access to the grand jury transcripts were sufficient to provide notice).

Thus, even when a timely challenge is made to a deficient charge, courts can consider other information provided to a defendant to determine whether the defendant had actual knowledge of what the defendant alleges was missing from a charge.[10]

We therefore consider information the record shows was provided to Kaakimaka up to the point he challenged the charge by filing his motion on November 15, 2021.

First, at a July 9, 2021 hearing to determine the voluntariness of Kaakimaka's statements, Kaakimaka testified he had been interviewed by Officer Takenishi before being charged and had admitted to videotaping a young girl in the bathroom. Second, police reports attached to Kaakimaka's motion to suppress filed on the same day as his motion to dismiss contained his confession to videotaping a girl "in the

---

[10]    We therefore note that Kaakimaka is wrong in arguing that actual knowledge is only relevant to the Motta/Wells liberal construction standard when a charge is challenged for the first time on appeal.  Actual knowledge is also relevant to an early challenge to the charge.

bathroom." The motion to suppress also stated more than once that the girl and her mother reported someone recording through "the bathroom window." So it is clear that Kaakimaka did have actual notice and knowledge of the charge against him, and that the "private place" was the bathroom.

Hence, the charge against Kaakimaka was not deficient.

## V.    Conclusion

For these reasons, the ICA's April 3, 2025 judgment on appeal is vacated, and this case is remanded to the ICA to address the remaining points of error on appeal.

Charles E. Murray III
for petitioner

R. Hermann Heimgartner
for respondent

/s/ Mark E. Recktenwald

/s/ Sabrina S. McKenna

/s/ Todd W. Eddins

/s/ Lisa M. Ginoza

/s/ Vladimir P. Devens

